Leeta MARTIN, Plaintiff-Appellant-Petitioner,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant-Respondent.

Supreme Court

*No. 78-352. Argued May 6, 1980.—Decided June 27, 1980.*
(Also reported in 293 N.W.2d 168.)

For the appellant-petitioner there were briefs by *Edward E. Leineweber* and *Gissen, Houser & Leineweber* of Richard Center, and oral argument by *Edward F. Leineweber*.

For the respondent there was a brief by *Thomas T. Schrader* and *McIntyre, Kinney, Urban & Schrader* of Lancaster, and oral argument by *Thomas T. Schrader*.

HEFFERNAN, J. This action stems from the asserted refusal of the Liberty Mutual Fire Insurance Company to settle an insurance claim filed by Leeta Martin for damages allegedly caused to her barn by high winds on August 21, 1975.[1] The policy in effect on the date the damage allegedly occurred contained an extended coverage endorsement for wind damage. The policy's three-year renewal period was due to expire on October 17, 1975.

Shortly after the damage allegedly occurred, Martin reported the loss to Bernard L. Keller, an agent and

[1] Martin's complaint and two amended complaints erroneously specify the date of loss as August 25, 1975. However, the record contains ample evidence that August 21, 1975, was the date Martin claimed the wind damage occurred.

officer of Liberty Mutual. Keller inspected the barn on August 25, 1975 and concluded that the damage was not the result of wind or any other event for which the company was liable. Although Keller told Martin the company was not liable because the damage was due to natural deterioration, he nevertheless suggested that she get an estimate on the amount necessary to repair the barn. Heeding Keller's suggestion, Martin contacted Paul Chamberlain, a local contractor specializing in barn repair. Chamberlain estimated the cost of repairing the structure at $1,500.

Because Martin insisted that the damage was caused by wind and threatened to contact an attorney if the insurance company denied her claim, Keller contacted John Schaaf, an independent insurance adjuster, and asked him to make an evaluation of Martin's claim. Schaaf inspected the barn, and he too concluded that the damage was due to natural deterioration rather than wind and recommended that the insurance company deny the claim. Schaaf told Martin and the insurance company of his recommendation on August 29, 1975.

In addition to denying the wind damage claim, the company cancelled Martin's policy, effective September 6, 1975, and gave Martin's failure to keep the barn in a reasonable state of repair as the reason for the mid-term cancellation. Martin contacted Attorney Darwin J. Nelson shortly after being notified of the policy cancellation. After contacting the company several times and being told that the company would not pay the claim, Nelson advised Martin to retain other counsel because litigation would be necessary if she wanted to further pursue her claim and he would not bring the suit.

The barn stood unrepaired until March, 1976, when it collapsed during an ice storm. In July of 1976, approximately four months after the ice storm, Martin retained the lawyer presently representing her. In response to his letter, the company wrote that it refused to

pay an unjustified claim. This letter was written approximately eleven months after the barn was allegedly damaged by wind.

Martin commenced this action on September 22, 1976, approximately thirteen months after the alleged wind damage. Martin alleged in her complaint that, because the insurer wrongfully refused to pay the $1,500 necessary to repair the wind damage and because she could not afford to repair the damage, the barn remained in its "structurally weakened state" until it collapsed during the ice storm. Martin sought compensatory damages totalling $10,200—for the loss of the barn, the loss of the crops stored inside the barn, and for various consequential damages caused by the lack of an adequate substitute building in which to store crops. She also sought $5,000 punitive damages.

The first claim stated in the complaint was grounded on the insurance policy; the second and third claims alleged tortious interference with the insurance contract by Bernard Keller, the company officer in charge of Martin's claim, and by John Schaaf, the independent claims adjuster.

Upon the defendants' motion, the trial court dismissed the second and third claims, granting Martin leave to replead those claims. Martin thereafter filed an amended complaint and a second amended complaint, both of which were based solely on the insurance contract and named Liberty Mutual as the sole defendant. The second and third claims were never repleaded.

The insurance company moved for summary judgment on the ground that Martin failed to commence the action within one year of the alleged loss as required by the policy. The policy provided that:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall

have been complied with, and unless commenced within twelve months next after inception of the loss."

The trial court granted the company summary judgment, reasoning that the action was on the policy and was not commenced within twelve months of the date Martin alleged her barn suffered wind damage. Martin appealed.

After concluding that the twelve month limitation in the policy was enforceable, the court of appeals, in an unpublished per curiam decision, granted Liberty Mutual's motion for summary affirmance. We granted Martin's petition for review.

Two issues are raised on review: First, did the one year limitation for the commencement of actions contained in the insurance policy bar the action; and, second, whether this court should consider the assertions, raised for the first time on this review, that Martin's pleadings stated a claim for the tort of bad faith by the insurance company and its two agents. Because neither issue has merit, we affirm the court of appeals' decision which summarily affirmed the circuit court's summary judgment in favor of the insurance company.

Martin argues that, because the policy's time limit for the commencement of an action is contractual rather than statutory and her action is for breach of the contract, and not to enforce its performance, she should not be bound to reciprocal performance of contractual terms favorable to the insurer. She contends that the policy limitation applies only to suits "on the policy" and does not apply to actions for breach of contract. She also contends that the company cannot rely upon a policy provision barring suit brought more than one year after a loss which the company denies ever happened.

The policy involved in this case is a version of the Standard Town Mutual Policy originally set forth in sec. 202.085, Stats. 1971, subsequently recodified in sec.

203.01, Stats. 1973, and made mandatory by sec. 203.06, Stats. 1973.[2] The form of the policy approved in the statutes contains a one-year limitation identical to the one Martin seeks to avoid in this case. The contractual limitation period of the standard policy has been approved and enforced by this court in numerous cases. *See, e.g., General Homes, Inc. v. Tower Insurance Co.,* 67 Wis.2d 97, 98–9, 226 N.W.2d 394 (1975) ; *Skrupky v. Hartford Fire Insurance Co.,* 55 Wis.2d 636, 201 N.W. 2d 49 (1972) ; *Riteway Builders, Inc. v. First National Insurance Co.,* 22 Wis.2d 418, 126 N.W.2d 24 (1964) ; *Townsend v. Milwaukee Insurance Co.,* 15 Wis.2d 464, 466–67, 113 N.W.2d 126 (1962).

■

Because the policy limit is a contractual provision, merely approved by statute (in those cases arising prior to the effective date of sec. 631.83(1), Stats.), Martin is correct in stating that the bar applies only if her action is "on the policy." We conclude that it is applicable because her action is on the policy.

■

An action to collect for a loss is, by its very nature, an action on the policy, since it is the policy which obli-

---

[2] These statutes were repealed after the wind damage allegedly occurred and replaced in part by sec. 631.83, Stats., ch. 375 Laws of 1975, effective June 22, 1976, which imposes a one year statutory limitation for commencing actions on fire and windstorm policies. The new section provides in pertinent part that:

"631.83 **Limitation of actions.** (1) STATUTORY PERIODS OF LIMITATION. (a) *Fire insurance.* An action on a fire insurance policy must be commenced within 12 months after the inception of the loss. This rule also applies to riders or endorsements attached to a fire insurance policy covering loss or damage to property or to the use of or income from property from any cause, and to separate windstorm or hail insurance policies.

". . .

"(5) TOLLING OF PERIOD OF LIMITATION. The period of limitation is tolled during the period in which the parties conducted an appraisal or arbitration procedure prescribed by the insurance policy or by law or agreed to by the parties."

gates the insurer to pay the loss. The fact that Martin characterizes her action as one for breach does not alter the essential nature of the action. In *Skrupky, supra,* we rejected a similar contention and said:

"[W]e are of the opinion that when a loss occurs that is or should have been covered by an insurance contract, an action or suit to collect must be based upon the policy. It is the insurance policy or contract that creates the obligation on the part of the insurance company to pay the loss.

". . . If a party chooses to call his cause of action misrepresentation, fraud, breach of warranty, negligence or mistake, the terms of the policy as they are or should have been still control the obligation of the insurer to pay for a loss. An action to resolve a dispute as to the liability of an insurer to pay the loss, under these circumstances, is an action on the policy.

"We believe the statutory twelve-month limitation contained in the policy applies. . . ." 55 Wis.2d at 641–42.

The two cases cited by Martin as support for her position, *Day v. Hustisford Farmers Mut. Ins. Co.,* 192 Wis. 160, 212 N.W. 301 (1927), and *French v. Fidelity & Casualty Co.,* 135 Wis. 259, 115 N.W. 869 (1908), are inapposite. Both cases involved policy provisions barring the insured from bringing suit until the insurer had a specified length of time after filing a claim to act upon it. Both cases held that the waiting period automatically ended when the insurer actually denied the claim. These cases do not support Martin's contention that, by labeling the action to determine the insurer's obligation to pay the alleged wind damage loss as a breach of contract action, the action is not founded upon the contractual obligation created by the policy. Martin's argument in this regard is supported by neither precedent nor reason.

Martin further contends that, even if the one year contractual limitation is applicable, the insurer's conduct tolled or suspended the limitation. She argues that her delay in bringing the action should be excused because the

company's conduct induced her to wait. She claims that the company adopted a "wait and see" attitude on her claim and points out that she retained two attorneys during the year following the alleged windstorm and both of them contacted the company in regard to her claim.

Nothing in the record brings this case within the estoppel doctrine discussed in *Heezen v. Hartland Cicero Mut. Ins. Co.*, 63 Wis.2d 449, 217 N.W.2d 272 (1974). In support of its motion for summary judgment, the insurance company in this case submitted the affidavits of Bernard Keller, the company employee in charge of the case, of John Schaaf, the independent adjuster, and of Darwin Nelson, Martin's first attorney. These affidavits, as well as letters contained in the record, prove that the company promptly informed Martin and her attorneys that the claim was unequivocably denied on the ground that the damage was due to natural deterioration, rather than wind, and that the company consistently maintained that position thereafter. Nothing in the record supports the contention that negotiations took place between the parties which would raise an issue of fact tending to show that the company should be estopped from asserting the one year limitation. Indeed, Nelson states in his affidavit that the company never led him to believe it would be willing to negotiate or settle the claim and he never advised Martin that it would.

The trial court did not abuse its discretion by declining to give credence to Martin's vague and self-serving affidavit. Eleven months after the claimed loss, the company unequivocally informed Martin that the alleged claim would not be paid. Although more than a month remained before the contractual bar to action would take effect, Martin failed to act and gives no reason for that failure. We noted in *Townsend v. Milwaukee Ins. Co.*, 15 Wis.2d 464, 467, 113 N.W.2d 126 (1962), in regard to a similarly defective affidavit:

"The affidavit fails to disclose any reason which would excuse the plaintiff's failure to bring the action more promptly, nor does it raise an issue as to waiver or estoppel on the part of the defendant. The counteraffidavit herein submitted on information and belief does not satisfy the requirements of sec. 270.635(2), Stats."

Martin's final argument is that in the interest of justice we should consider the claim, abandoned as the result of failing to replead her amended and second amended complaint and raised for the first time on this review, that her original complaint stated a claim for the tort of bad faith by the insurer and its two agents. In essence, Martin is asking to be relieved of her failure to timely commence this action by asking this court to reinstitute the claim of tortious interference with the insurance contract that the trial court dismissed and which she failed to replead and to treat that abandoned claim as one for tort of bad faith.[3]

This court will not entertain claims which were not pleaded or pursued below and which were not even remotely considered by the trial court or court of appeals in their disposition of the case. Nor will we consider Bernard Keller and John Schaaf to be party defendants merely because appellant's counsel unilaterally and without court order altered the caption of this appeal to include their names.

Finally, we note that this record fails to disclose any evidence that the insurer acted in bad faith in this case.

[3] The parties note in their briefs that on February 9, 1979, during the pendency of the subject action, Martin commenced a separate action against Liberty Mutual and its two agents alleging the tort of bad faith. Martin urges that, in fairness to her and in the interest of judicial economy, we should reverse the courts below and remand the action to be consolidated with her second lawsuit. We decline to do so, because reversing the justified summary judgment in this case would promote neither fairness nor judicial economy.

An insurer's refusal to pay a claim which it concludes to be unjustified does not, in and of itself, constitute bad faith.

We conclude that the one year contractual limitation of the policy was properly applied by the trial court and the court of appeals and that the tort of bad faith urged on this review was not pleaded or even arguably supported by the record.

*By the Court.*—Decision of the Court of Appeals which affirmed the judgment of the circuit court affirmed.