KLUSENDORF CHEVROLET-BUICK, INC. and Compass
Insurance Company, Plaintiffs-Respondents,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Paul Kloster-
man (Deceased) and the State of Wisconsin,
Defendants,

Lloyd & Delores KLOSTERMAN,
Defendants-Appellants.†

Court of Appeals

*No. 82–628. Submitted on briefs November 15, 1982.—
Decided December 21, 1982.*
(Also reported in 328 N.W.2d 890.)

† Petition to review denied.

For the defendants-appellants the cause was submitted on the brief of *Frank A. Ross, Jr.* and *Ross and Chatterton Law Offices* of Madison.

For the plaintiffs-respondents the cause was submitted on the brief of *Bradley D. Armstrong* and *Steven J. Schooler* and *Brynelson, Herrick, Gehl & Bucaida* of Madison.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J. This is a worker's compensation case. The issue is whether Paul Klosterman was an employe of Klusendorf Chevrolet-Buick, Inc., at the time he received injuries causing his death.

## FACTS

The Labor and Industry Review Commission made the following findings of fact.

On November 7, 1979, Paul Klosterman took his automobile to be serviced at the Klusendorf garage in Dodgeville. He had previously been employed by Klusendorf to do errands and deliveries, and knew all their employes. He was talking to one of Klusendorf's employes while waiting for his car to be serviced when Klusendorf's

service manager called both of them over to his desk and stated that he needed to have two vehicles driven from Dodgeville to Mount Horeb. The service manager had only one employe to take the vehicles, which prompted Klosterman to offer to drive the other vehicle. The service manager accepted. One of the owners of the garage subsequently learned that Klosterman had driven the car and acquiesced in his doing so. Driving the vehicle was a service to Klusendorf which was ordinarily performed by a salaried employe.

Klosterman was instructed to follow the other vehicle to Mount Horeb. Klosterman and Klusendorf had no agreed wage or definite term of employment. Klusendorf had the right to control Klosterman, though it may not have exercised that right because Klosterman knew what to do.

The offer by Klosterman to perform services for Klusendorf and the acceptance by Klusendorf expressly and impliedly created an employer-employe relationship.[1]

On the way to Mount Horeb, Klosterman was involved in a fatal automobile accident.

The LIRC hearing examiner concluded that Klosterman was not an employe of Klusendorf at the time of the fatal accident. The commission reversed that conclusion, and the circuit court reversed the commission. We affirm the circuit court's judgment.

## SCOPE OF REVIEW

In *Nottelson v. ILHR Department,* 94 Wis. 2d 106, 114–17, 287 N.W.2d 763, 767–68 (1980), the court said:

---

[1] Though denominated as a finding of fact, whether Klosterman was an employe of Klusendorf is a question of law. *Revels v. Industrial Comm.,* 36 Wis. 2d 395, 401, 153 N.W.2d 637, 640 (1967). The commission's label is not conclusive with respect to determining the substance of the statement as either a conclusion of law

It is axiomatic that the commission's findings of fact are conclusive on appeal so long as they are "supported by credible and substantial evidence," sec. 102.23(6), Stats., and that any legal conclusion drawn by the commission from its findings of fact is subject to judicial review. We have often stated that the court is not bound by the agency's determination of a question of law.

. . . .

. . . One of the most troublesome issues in administrative law is determining whether . . . the application of a statutory concept to a concrete fact situation, should be treated as a question of fact or of law for the purposes of judicial review. In many cases we have said that the determination of whether the facts fulfill a particular legal standard is a question of law. . . .

Nevertheless, merely labeling the question as a question of law and labeling the commission's determination as a conclusion of law does not mean that the court should disregard the commission's determination. [The application of a statutory concept to a concrete fact situation] calls for a value judgment, and judicial review of such a value judgment, though a question of law, requires the court to decide in each type of case the extent to which it should substitute its evaluation for that of the administrative agency. We have recognized that when the expertise of the administrative agency is significant to the value judgment (to the determination of a legal question), the agency's decision, although not controlling, should be given weight. [Footnotes omitted.]

The question we face involves the application of a statute to facts which we must accept. Though this is a question of law, we defer to a certain extent to the commission's application. *De Leeuw v. ILHR Dept.*, 71 Wis. 2d 446, 449, 238 N.W.2d 706, 709 (1976). We should not substitute our judgment for a commission's application of a statute to found facts if a rational basis exists in

or finding of fact, though it may be significant to our standard of review. *Board of Ed., Brown Deer Schools v. WERC*, 86 Wis. 2d 201, 209, 271 N.W.2d 662, 666 (1978).

law for the commission's interpretation and it does not conflict with the statute's legislative history, prior appellate decisions, or constitutional prohibitions. *Pabst v. Department of Taxation,* 19 Wis. 2d 313, 323–24, 120 N.W.2d 77, 82 (1963).

We will defer to a certain extent to the commission's conclusion that Klosterman was an employe of Klusendorf. Even doing so, we affirm the circuit court because the commission's conclusion is not supported by credible and substantial evidence and conflicts with a prior decision of our supreme court.

## SUFFICIENCY OF EVIDENCE

The requirement that a private sector worker's compensation claimant be an employe to be eligible for worker's compensation benefits is set out in sec. 102.07 (4), Stats. That section provides: " 'Employe' as used in this chapter means: . . . (4) Every person in the service of another under any contract of hire, express or implied . . . ."

Tests for determining whether a person is an employe were most recently stated in *Kress Packing Co. v. Kottwitz,* 61 Wis. 2d 175, 182, 212 N.W.2d 97, 100–01 (1973). The court said:

This court stated the primary test for determining the existence of an employer-employee relationship is whether the alleged employer has a right to control the details of the work; and among the secondary tests which should be considered are: (1) The direct evidence of the exercise of the right to control; (2) the method of payment of compensation; (3) the furnishing of equipment or tools for the performance of the work; and (4) the right to fire or terminate the relationship.

Though the rules stated in *Kress* are not limited to employe-independent contractor situations, they do not in-

clude an inquiry into payment of wages, except as "method of payment" includes whether wages were contemplated. Wages, as an indication of an employer-employe relationship, were discussed in *C.R. Meyer & Sons Co. v. Grady*, 194 Wis. 615, 623, 217 N.W. 408, 411 (1928). The court said: "One of the usual and ordinary tests, and, in many instances, the decisive test, which stamps one engaged in performing work an employee rather than an independent contractor, is the fact that wages are paid, and that upon an hourly, daily, or weekly basis."

In *Miller & Rose v. Rich*, 195 Wis. 468, 470, 218 N.W. 716, 717 (1928), the court examined the scope of our Worker's Compensation Act, and said:

The compensation act was passed to care for personal injuries resulting from such accidents,—such accidents as grew out of the relation of master and servant under the common law. Hence, we have the significant expressions in defining employer (master) and employee (servant) : "Every person . . . who has any person in *service* under any contract of *hire*" is an employer. Sub. (2), sec. 102.04. "Every person in the *service* of another under any contract of *hire*" is an employee. Sub. (4), sec. 102.07, Stats. (The emphasis is ours.) The act was framed by a legislative interim committee and its able counsel, which reported a printed bill with ample explanations of each section. This printed report they denominated *"Workmen's* Compensation Bill and Report." All through the report the idea is dominant that the compensation act was to cover "laborers," "workmen," "employees," "servants," "wages." The bill became a law, substantially as reported. Ch. 50, Laws of 1911. So we may safely say that, except as amended, the act covered no one except workers for hire, in the common acceptation of such expressions as were used. [Emphasis in original.]

1C Larson, *Workmen's Compensation Law* sec. 47.41 at 8–255–59 (1980), is more specific. Professor Larson states:

The word "hire" connotes payment of some kind. By contrast with the common law of master and servant,

which recognizes the possibility of having a gratuitous servant, the compensation decisions uniformly exclude from the definition of "employee" workers who neither receive nor expect to receive any kind of pay for their services.

. . . .

Although, as the next subparagraph will show, the performance and acceptance of valuable service normally raises an implication that payment for the services is expected, this implication does not arise when the circumstances negative such an expectation. This occurs in at least three common situations. [Footnotes omitted.]

*Kress, supra,* is cited as an example of one of the situations, "patriotic or charitable duties." In *Kress,* the chairman of the food committee for a V.F.W. post was injured while returning from delivering meat to a V.F.W. picnic. The owner of the truck was held not to be the chairman's employer for worker's compensation purposes because there was no evidence of an intent to create an employment contract. *Kress* strongly suggests that wages are a requirement of the "contract of hire." The commission's conclusion therefore conflicts with the court's holding in *Kress.*

Cases from other jurisdictions support the suggestion in *Kress* that wages are a necessary factor if an employer-employe relationship is to be found. In *Wolverine Ins. Co. v. Jockish,* 403 N.E.2d 1290, 1294 (Ill App 1980), the court said:

Jockish never performed any day labor for Hood. Hood never withheld federal income tax or social security tax payments to Jockish. Jockish was never included in the computation of unemployment or workman's compensation insurance for Hood's business. Jockish never received nor had any sound expectation of receiving remuneration for his work on December 2, 1977. The evidence will not support a finding that Jockish was an employee, but on the contrary establishes him as a helpful friend and neighbor.

In *Carnes v. Transport Ins. Co.*, 615 S.W.2d 909, 911 (Tex Civ App 1981), the court said:

"The evidence is sufficient to show that appellee performed services for the Lamesa Cotton Oil Company on the occasion but we are of the opinion that it is insufficient to show that such services were performed under a contract of hire either expressed or implied. It was incumbent upon appellee to establish that the services so performed were under a contract of hire either expressed or implied. It is our opinion that remuneration is a necessary element in a contract of hire under the Workmen's Compensation Act." [Citation omitted.]

Though we conclude that wages are a necessary part of an employer-employe relationship, the wages need not be money. In *Betts v. Ann Arbor Public Schools*, 271 N.W.2d 498, 500 (Mich 1978) (footnote omitted), the court said: "Those who perform services gratuitously are generally excluded from the definition of 'employee,' but the payment necessary to establish a contract of hire need not be in money." The court concluded that a "practice teacher" who received no money, but training, college credits, and a prerequisite for a state certificate was entitled to worker's compensation benefits when injured at the employer's school.

The evidence in this case shows that Klosterman was contemplating seeking re-employment at Klusendorf, that driving the car was a service to Klusendorf, and that Klusendorf did not send a bill for the work performed on Klosterman's car.

The requirement of wages was not met by Klosterman's hope of re-employment. Unfulfilled hope, even if communicated, does not give anything of value to a prospective employe. Appellant concedes this, for he states, "In the present case there is no benefit to the deceased."

Though Klosterman's services were a benefit to Klusendorf, that factor is not wages. Were we to accept a "benefit conferred" test and infer wages if any benefit were conferred, volunteers would cease to exist in worker's compensation law. The only other evidence of "wages" is Klusendorf's cancellation of its bill for servicing Klosterman's car. No evidence supports the inference that the bill was cancelled in return for Klosterman's delivering the car. The only evidence is that the bill was cancelled after Klosterman's death, and because of the death. No evidence supports an inference that Klosterman expected to be paid for his services.

There is no credible and substantial evidence to support the inference that wages were expected by Klosterman or to be paid by Klusendorf.[2] Accordingly, an employer-employe relationship was neither expressly nor impliedly created. We therefore need not address the issue of whether the commission properly calculated benefits.

*By the Court.*—Judgment affirmed.

[2] We reach this result whether we determine that the implication of payment for services never arose because the circumstances negative such an expectation, as suggested in 1C Larson, *Workmen's Compensation Law* sec. 47.41 at 8–259 (1980), or that a presumption of payment was raised but overthrown by the testimony. *Kolman v. Industrial Comm.*, 219 Wis. 139, 144, 262 N.W. 622, 624 (1935).