Peter CHAPPY d/b/a Chappy Electric Company
and Bituminous Insurance Companies,
Plaintiffs-Appellants. †

v.

LABOR & INDUSTRY REVIEW COMMISSION,
Department of Industry, Labor & Human
Relations of the State of Wisconsin and Louise
Chappy, Defendants-Respondents.

Court of Appeals

*No. 84–2320. Oral argument October 10, 1985.—Decided
December 26, 1985.*
(Also reported in 381 N.W.2d 552.)

† Petition to review granted.

For the plaintiffs-appellants, briefs were filed by *M. Christin Cowles* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee Oral argument by *Robert Zilske.*

For the defendants-respondents, a brief was filed by *Bronson C. La Follette,* attorney general, and *Gordon Samuelsen,* assistant attorney general. Oral argument by *Gordon Samuelsen.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.  Peter Chappy and Bituminous Insurance Companies (Bituminous) appeal from a judgment of the circuit court affirming a decision by the Labor and Industry Review Commission (LIRC) determining the rate at which Louise Chappy was to receive temporary total disability (TTD) benefits under the Worker's Compensation Act.

Bituminous argues that LIRC improperly applied the relevant statute retroactively and that the retroactive application unconstitutionally impaired its contract rights and violated due process. We reject these arguments and affirm the circuit court's judgment.

Louise Chappy was injured at her place of employment on February 27, 1967. As a result, Chappy received TTD benefits from her employer's worker's compensation insurer, Bituminous, at a rate of 70% of her average weekly salary. This rate of compensation represented 57.6% of the maximum TTD benefits available in 1967. In October 1980 Chappy suffered another period of disability which was related to the original injury. Chappy again received TTD benefits. She was

paid 57.6% of the maximum rate available in 1980. At dispute is the proper rate at which TTD benefits ought to be paid to Chappy for the renewed period of disability beginning in October 1980.

At the time of the original injury in 1967, sec. 102.03(4), Stats. (1965), of the Worker's Compensation Act, provided that the right to and amount of compensation "shall in all cases be determined in accordance with the provisions of law in effect as of the date of the injury." After Chappy's original injury, but before her renewed period of disability, sec. 102.03(4) was amended several times[1] and in October 1980 provided:

The right to compensation and the amount of the compensation shall in all cases be determined in accordance with the provisions of law in effect as of the date of the injury *except as to employes whose rate of compensation is changed as provided in ss. 102.43(7) and 102.44(1) and (5).* [Emphasis added.]

Section 102.03(4), Stats. (1979–80). LIRC determined the rate of Chappy's TTD benefits in 1980, pursuant to sec. 102.43(7), Stats., which was created by sec. 29, ch. 195, Laws of 1977, and in October 1980 provided:

If an employe has a renewed period of temporary total disability commencing more than 2 years after the date of injury, payment of compensation for the new period of disability shall be made as follows:

(a)  If the employe was entitled to maximum weekly benefits at the time of injury, payment for the renewed temporary total disability shall be at the max-

---

[1] *See* sec. 2, ch. 148, Laws of 1971; sec. 52, ch. 307, Laws of 1971; ch. 324, Laws of 1971; sec. 3, ch. 195, Laws of 1977; and sec. 56, ch. 272, Laws of 1977.

imum rate in effect at the commencement of the new period.

(b)     If the employe was entitled to less than the maximum rate, the employe shall receive the same proportion of the maximum which is in effect at the time of the commencement of the renewed period as the employe's actual rate at time of injury bore to the maximum rate in effect at that time.

Section 102.43(7), Stats. (1979–80).[2]

LIRC ordered that Chappy be paid at the rate prescribed in sec. 102.43(7)(b), Stats. (1979–80). Bituminous appealed to the circuit court which affirmed LIRC's order. Bituminous appeals.

---

[2] Section 102.43(7), Stats., was amended by 1983 Wis. Act 98, secs. 20–22, and currently provides:

(7)(a) If an employe has a renewed period of temporary total disability commencing more than 2 years after the date of injury and, except as provided in par. (b), the employe returned to work for at least 10 days immediately preceding the renewed period of disability, payment of compensation for the new period of disability shall be made as follows:

1.    If the employe was entitled to maximum weekly benefits at the time of injury, payment for the renewed temporary total disability shall be at the maximum rate in effect at the commencement of the new period.

2.    If the employe was entitled to less than the maximum rate, the employe shall receive the same proportion of the maximum which is in effect at the time of the commencement of the renewed period as the employe's actual rate at time of injury bore to the maximum rate in effect at that time.

(b)    An employe need not return to work at least 10 days preceding a renewed period of temporary total disability to obtain benefits under sub. (5) for rehabilitative training commenced more than 2 years after the date of injury.

The application of a statute to a set of facts presents a question of law. *Maxey v. Redevelopment Authority,* 120 Wis.2d 13, 18, 353 N.W.2d 812, 815 (Ct. App. 1984). As such, we are not bound by LIRC's interpretation and we may review the issue *ab initio. L & H Wrecking Co. v. LIRC,* 114 Wis.2d 504, 510, 339 N.W.2d 344, 347 (Ct. App. 1983). However, if the legal conclusions of an administrative agency are reasonable, they will be sustained even if an alternative view is equally reasonable. *Eaton Corp. v. LIRC,* 122 Wis.2d 704, 708, 364 N.W.2d 172, 174 (Ct. App. 1985). We should not substitute our judgment for that of the commission if there is a rational basis in law for the commission's interpretation, so long as it does not conflict with the legislative history of the statute, prior appellate decisions, or specific constitutional prohibitions. *Klusendorf Chevrolet-Buick, Inc. v. LIRC,* 110 Wis.2d 328, 331–32, 328 N.W.2d 890, 892 (Ct. App. 1982).

Bituminous first claims that sec. 102.43(7)(b), Stats. (1979–80), may not be applied retroactively to cases where the original injury occurred before creation of the statute. We disagree.

Generally, legislation is presumed to apply prospectively unless statutory language indicates, by express language or necessary implication, an intent that the legislation apply retroactively. *State v. DILHR,* 101 Wis.2d 396, 403, 304 N.W.2d 758, 761 (1981). This general rule, however, does not apply to remedial statutes. *Id.* at 404, 304 N.W.2d at 762. Where a statute is remedial or procedural in nature, it will be given retroactive application unless the legislature expresses a contrary intent or unless retroactive application disturbs contracts or vested rights. *City of Madison v. Town of Mad-*

*ison,* 127 Wis 2d 96, 102, 377 NW2d 221, 224 (Ct App 1985). Remedial statutes are "those which afford a remedy, or improve or facilitate remedies already existing for the enforcement of rights and redress of injuries." *Bruner v. Kops,* 105 Wis.2d 614, 619, 314 N.W.2d 892, 894–95 (Ct. App. 1981), quoting 3 C. Sands, *Statutes & Statutory Construction* § 60.02 (4th ed. 1974).

The Worker's Compensation Act is a remedial statute. *DILHR* at 405, 304 N.W.2d at 762; *Jaeger Baking Co. v. Kretschmann,* 96 Wis.2d 590, 602, 292 N.W.2d 622, 628 (1980). Section 102.43(7)(b), Stats. (1979–80), increased previously existing compensation rates for injuries covered by the Worker's Compensation Act. Therefore, we do not begin our analysis with a presumption that sec. 102.43(7)(b) may be applied only on a prospective basis. Rather, we conclude that sec. 102.43(7)(b) may be applied retroactively provided that such application does not disturb contract or vested rights. *See City of Madison* at 102, 377 NW2d at 224.

Furthermore, we conclude that the statute itself reflects a legislative intent that it be applied retroactively. Section 102.03(4), Stats., provides for the retroactive application of sec. 102.43(7), Stats. (1979–80):

The right to compensation and the amount of the compensation shall in all cases be determined in accordance with the provisions of law in effect as of the date of the injury *except as to employes whose rate of compensation is changed as provided in ss. 102.43(7)* and 102.44(1) and (5). [Emphasis added.]

The parties do not dispute that the legislature was attempting to deal with the effects of inflation upon compensation rates when it enacted this statute. Since the legislative intent was to afford benefits in keeping with

economic conditions at the time of renewed periods of disability, we conclude that the legislature intended retroactive application of sec. 102.43(7). [3]

Next, Bituminous argues that the retroactive application of sec. 102.43(7)(b), Stats. (1979–80), impaired its contract rights because retroactive application "imposes an obligation upon Bituminous for which it cannot receive recompense from its policyholder . . . through increased premiums." We are not persuaded that Bituminous's contract rights were unconstitutionally impaired.

■

The federal and state constitutions prohibit the state from enacting statutes which impair contract obligations. *See* U.S. Const., art. I, sec. 10; Wis. Const., art. I, sec. 12. The constitutional proscription against impairment of contracts, however, is not absolute and the contract clause cannot be read literally to prohibit any impairment of contract. *State ex rel. Cannon v. Moran,* 111 Wis.2d 544, 553–54, 331 N.W.2d 369, 374 (1983). The obligations of contract may have to yield, in certain circumstances, to a compelling interest of the public. *Id.* at 554, 331 N.W.2d at 374. *See also State ex rel. Building Owners & Managers Association of Milwaukee, Inc. v. Adamany,* 64 Wis.2d 280, 292, 219 N.W.2d 274, 280 (1974).

---

[3] We are aware that *State v. LIRC,* 126 Wis.2d 514, 376 N.W.2d 868, slip op. at 9 (Ct. App. 1985), observes that "Neither sec. 102.03(4) nor the amendment to sec. 102.44 contain any suggestion of retroactivity." However, the rule of the case is that the commission had no authority to order supplemental benefits authorized by sec. 102.66, Stats., under sec. 102.44, Stats. The statement regarding retroactivity is, therefore, dicta.

The first step of the analysis is to determine whether an obligation of contract has been impaired. *Cannon* at 554, 331 N.W.2d at 374. *See also Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244 (1978). "[L]egislation which alters the contractural expectations of the parties impairs the obligation of contract." *Cannon* at 555, 331 N.W.2d at 375. If contract obligations are impaired, we must then determine whether such impairment is unconstitutional. *Id.* at 557, 331 N.W.2d at 376. The statute challenged must have a significant and legitimate public purpose, such as remedying a broad and general social or economic problem. *Id.* at 560, 331 N.W.2d at 377. The final inquiry is whether the statute is reasonable and appropriate for the public purpose justifying its enactment. *Id.* at 561, 331 N.W.2d at 378.

Even assuming that the retroactive application of sec. 102.43(7), Stats. (1979–80), resulted in an impairment of Bituminous's contract obligations, we nonetheless conclude that the impairment was not unconstitutional. We are persuaded that sec. 102.43(7) has a significant and legitimate public purpose and that the statute is reasonable and appropriate, given its purpose.

Worker's compensation statutes are economic regulations by which the legislature has balanced competing societal interests as a matter of public policy. *Mulder v. Acme-Cleveland Corp.,* 95 Wis.2d 173, 180, 290 N.W.2d 276, 280 (1980). Worker's compensation is wholly statutory and questions regarding what should properly be the public policy should be determined by the legislature, not the courts. *Larson v. DILHR,* 76 Wis.2d 595, 621, 252 N.W.2d 33, 45 (1977). The overall

objectives of worker's compensation statutes are to protect injured employees and those who depend on such employees for support. *Id.* at 615, 252 N.W.2d at 42.

The parties do not dispute that the specific intent of the legislature in creating sec. 102.43(7), Stats. (1979–80), was to protect employees who suffer renewed periods of disability between the time of original injury and the renewed period of disability from the effects of inflation. The statute is intended to remedy the injustice of basing TTD benefits on rates which, due to inflation, no longer sufficiently compensate a disabled worker and which do not provide the worker with the same level of sustenance as was originally supplied. This is a legitimate and significant public purpose. *See State ex rel. Briggs & Stratton Corp. v. Noll,* 100 Wis.2d 650, 671–72, 302 N.W.2d 487, 498 (1981) (Abrahamson, J., dissenting). *See also Selk v. Detroit Plastic Products,* 345 N.W.2d 184, 189 (Mich. 1984).

Courts in other jurisdictions, in the face of the same arguments posited by Bituminous, have held that legislative increases in worker's compensation payments may be applied retroactively because of the public purposes served. *See Lahti v. Fosterling,* 99 N.W.2d 490 (Mich. 1959), and the cases cited therein. We are similarly convinced that a significant and legitimate public purpose is served by sec. 102.43(7), Stats. (1979–80).

Furthermore, we are persuaded that sec. 102.43(7), Stats. (1979–80), is reasonable and appropriate for the purpose of remedying the effects of inflation on a worker collecting TTD benefits several years after the original injury. For those suffering renewed periods of disability, sec. 102.43(7) bases the rates for TTD benefits on the maximum benefits allowed at the time of

the renewed period of disability.[4] The actual rate paid to the worker suffering a renewed period of disability is based on the percentage of the maximum rate the worker received at the time of the original injury.[5] Section 102.43(7) also requires a two-year interval between the date of the original injury and the period of renewed disability. We find the statutory scheme reasonable and appropriate. Accordingly, we find no unconstitutional impairment of contract.

Bituminous also argues that the retroactive application of sec. 104.43(7)(b), Stats. (1979–80), deprives it of property without due process of law "because it arbitrarily changes the agreed remedy of an injured worker by altering both the method by which the person's compensation is computed and, necessarily, the amount of compensation owed that injured worker." We reject this argument because we agree with the state's position that sec. 102.43(7) uses a rational means to achieve a legitimate end.

It is well established that legislation adjusting the burdens and benefits of economic life is presumed constitutional and the burden is on the party claiming a due process violation to establish that the legislature

---

[4] Prior to the creation of sec. 102.43(7), Stats. (1979–80), the rate of benefits would be based on the maximum amount available at the time of the original injury.

[5] Under this statutory scheme, Chappy received more per week in TTD benefits than her weekly salary. While the wisdom of this result can surely be questioned, this is a matter for the legislature to address, and, in any event, does not affect the constitutionality of the statute. Where the legislature has been overly generous with benefits for injured employees, we have previously held that such matters are legislative policy and are not for the courts to modify or nullify. *See Town of Pine Grove v. LIRC,* 112 Wis.2d 412, 416, 332 N.W.2d 868, 870 (Ct. App. 1983).

has acted arbitrarily and irrationally. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). "[L]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. . . . This is true even though the effect of the legislation is to impose a new duty or liability based on past acts." *Id.* at 16 (citations omitted). Furthermore, the Michigan Supreme Court in *Lahti* explained:

The due process clause of the State and Federal Constitutions does not freeze the burden of compensation liability as of the date of the occurrence of an industrial accident, beyond the power of legislative change. In carrying out its social purpose, the Legislature has the power to increase the burden on the employer for disability or expenses occurring or continuing after the date of the enactment of the amendatory statute, even though the accident which gave rise to the disability or expenses had occurred prior to that time.

*Lahti*, 99 N.W.2d at 497, quoting *Hogan v. Lawlor & Cavanaugh Co.*, 286 App. Div. 600, 604, 146 N.Y.S.2d 119, 123 (1955). *See also Selk*, 345 N.W.2d at 190.

As we previously noted, worker's compensation statutes are economic regulations by which the legislature has balanced societal interests. *Mulder*, 95 Wis.2d at 180, 290 N.W.2d at 280. "Because the law of worker's compensation is wholly statutory, public policy questions concerning its scope and fairness are for the legislature rather than the courts." *Jaeger Baking*, 96 Wis.2d at 597, 292 N.W.2d at 625. *See also Jadofsky v. Iowa Kemper Insurance Co.*, 120 Wis.2d 494, 497–98, 355 N.W.2d 550, 552 (Ct. App. 1984). The basic purpose of worker's compensation is to provide prompt relief to

injured employees, regardless of fault, and to allocate the financial burden to the most appropriate source— the employer and, ultimately, the consumer. *Klein Industrial Salvage v. DILHR,* 80 Wis.2d 457, 462, 259 N.W.2d 124, 126 (1977). In an effort to fulfill this purpose and ensure that the financial burden is allocated properly, the legislature created sec. 102.43(7), Stats. (1979–80). We are therefore not persuaded that the retroactive application of sec. 102.43(7) deprives Bituminous of its property without due process of law.

*By the Court.*—Judgment affirmed.