STATE of Wisconsin, Plaintiff-Respondent,†

v.

BETTER BRITE PLATING, INC., a Wisconsin corporation, Defendant,

The ZINC SHOP, INC., a Wisconsin corporation, Defendant-Co-Appellant,

David J. MATYAS, Trustee, Defendant-Appellant,

John E. ZENNER, Defendant-Co-Appellant.

Court of Appeals

*No. 90–0280. Oral argument October 24, 1990.—Decided February 5, 1991.*

(Also reported in 466 N.W.2d 239.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of and orally argued by *David J. Matyas* of De Pere.

On behalf of the defendants-co-appellants, the cause was submitted on the briefs of and orally argued by *Joseph C. Niebler* of *Niebler & Muren, S.C.* of Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Robert M. Hunter,* assistant attorney general, and orally argued by *Robert M. Hunter* of Madison.

An amicus curiae brief was submitted by *Michael C. Runde,* chairperson, The Bankruptcy, Insolvency & Creditors Rights Section of the State Bar of Wisconsin, of *Charne, Clancy & Taitelman S.C.* of Milwaukee; *John M. Van Lieshout* of *Charne, Clancy & Taitelman, S.C.* of Milwaukee; and *Paul G. Swanson* of *Steinhilber, Swanson, Mares, Curtis & Marone* of Oshkosh; and orally argued by *John M. Van Lieshout.*

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Zinc Shop, Inc., a bankrupt corporation, John Zenner and David Matyas, former trustees in the bankruptcy proceedings, appeal a summary judgment in a civil forfeiture action that subjects the defendants to personal liability for civil forfeitures (up to $25,000 a day) and costs of cleanup (estimated up to $400,000 or more).[1] The action was filed pursuant to the

[1] This court granted leave to appeal. The summary judgment relates only to claims one, three and five of the complaint. Other claims and the imposition of penalties remain pending in the trial court.

Hazardous Waste Management Act (HWMA) as set out in ch. 144, Stats.[2] We reverse the summary judgment and remand as to Zinc Shop because the complaint failed to state a claim against it. Although the circuit court apparently granted a motion to amend the complaint as to Zinc Shop after this appeal was taken, we decline to address the propriety of summary judgment based upon the amended complaint because portions of the record remain in the trial court and the issue is best resolved based upon a complete record.

We reverse and remand the summary judgment against Zenner and Matyas solely to resolve whether they intentionally and knowingly failed to obtain a license to operate a hazardous waste facility, thereby subjecting either or both of them to personal liability. We reject Zenner's remaining challenges to the circuit court's conclusion that no other material disputed facts remained, that the court erroneously interpreted the HWMA and that the United States Bankruptcy Court rulings constitute res judicata as to the state's complaint.

Because we conclude that the question of the trustee's personal liability remains, summary judgment was inappropriate. Where certain factual and legal matters are capable of resolution prior to trial but other disputes as to a particular claim remain, a pretrial order and not a summary judgment is the appropriate method to define and simplify the issues that remain for trial. *In re T.M.S.*, 152 Wis. 2d 345, 354, 448 N.W.2d 282, 285–86 (Ct. App. 1989). We therefore construe the court's rulings on those issues of law and fact concerning which no

---

[2]The parties indicated at oral argument that the waste has been removed by state or federal officials during the pendency of these proceedings. The defendants presumably remain potentially liable for costs of removal.

material disputed facts exist and no legitimate legal questions remain as an order under sec. 802.11(1)(a), Stats. This section provides in part:

> In all contested civil actions . . . the judge may . . . determine whether an order should be entered on any or all of the following matters:
>      (a)   Definition and simplification of the issues of fact and law;

Because we agree with the circuit court's rulings except as to personal liability of a bankruptcy trustee, only the latter issue remains to be tried.

The essence of the state's first claim, consisting of some thirty-five paragraphs of allegations, is that Zenner, as a ch. 11 examiner/trustee for Better Brite, failed to obtain a DNR license as required by the HWMA to operate a facility for the storage of hazardous waste for a period of at least ninety days prior to August 27, 1986.

The third claim alleges that Matyas, after his appointment as a ch. 7 bankruptcy trustee for Better Brite on August 27, 1986, continued to store the waste without a license until December 18, 1986.

The fifth claim alleges that Matyas, as ch. 7 trustee, leased Better Brite's building and equipment to Zenner and Zinc Shop with the exception of the hazardous waste and the real estate underlying the building, and that Matyas, as trustee, therefore continued to store the waste without a license. The court granted this partial summary judgment but withheld imposition of penalties pending disposition of the charges remaining to be tried.

Zenner first challenges the circuit court's legal conclusion that no material factual disputes exist as to the claim against him. Because the HWMA provides an exception to the licensing requirement for storage for less than ninety days, and because Zenner was replaced

814

as trustee on August 27, 1986, Zenner relies upon his affidavit in opposition to summary judgment that states that the disputed barrels of sludge were accumulated as the result of a system "made operational in approximately June, 1986." Zenner therefore reasons that less than ninety days expired between June 1 when the sludge was accumulated and August 27, the date that he was relieved of his trusteeship. We reject the affidavit as inadequate to avoid summary judgment.

■■

Summary judgment methodology is governed by sec. 802.08, Stats., and has been described in many cases. *See Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). The purpose of summary judgment procedure is to determine whether a dispute can be resolved without trial. *Dean Foods Co. v. Foley,* 125 Wis. 2d 131, 133, 370 N.W.2d 588, 589 (Ct. App. 1985). An affidavit may be rejected if it is too vague. *See Martin v. Liberty Mut. Fire Ins. Co.,* 97 Wis. 2d 127, 134, 293 N.W.2d 168, 172 (1980). Where the critical date triggering the sanction period is the last week of May, reference to "approximately June" is insufficient. This is especially true in consequence of all of the other facts of record.

Zenner's employee in charge of the pretreatment system informed the DNR that the system generated sludge prior to May 11, 1986. Zenner, himself, in prior testimony before the bankruptcy court, specifically stated that some of the barrels of hazardous waste were in existence prior to March 1986. Zenner's testimony revealed that he used the term "operational" in regard to the facility in a limited sense to mean in "a full and profitable . . . capacity." Accordingly, it is undisputed that although the system may not have been fully functional until June 1986, it was working in some limited capacity and did generate sludge, later identified as haz-

ardous, prior to May 29, 1986. Because barrels of waste indisputably existed prior to May 29, 1986, Zenner stored the barrels for more than ninety days.

Zenner also maintains that there is a genuine issue of material fact as to the contents of the barrels. Zenner argues that the state has submitted no objective, competent evidence that the barrels contain hazardous waste as defined in ch. 144, Stats. The question whether the sludge in the barrels is hazardous is a mixed question of fact and law. *See Crowley v. Knapp,* 94 Wis. 2d 421, 429-30, 288 N.W.2d 815, 819-20 (1980).

There is no dispute that the barrels contain sludge produced by Better Brite's pretreatment system and that cyanide is used in the plating process. Zenner, however, disputes the composition of the sludge, arguing that his affidavit establishes that the barrels of sludge passed through a treatment that destroyed any cyanide. We reject this contention. Zenner's affidavit merely established that one of the purposes of the pretreatment system was to destroy cyanide. It does not refute the facts established by the state's affidavits that the sludge is from an electroplating process in which cyanides are used and that the sludge contained cadmium in excess of 1 mg/1. Accordingly, there is no genuine issue of material fact as to the contents of the barrels.

Zenner also challenges several legal conclusions interpreting the HWMA. Whether the contents of the barrels, established to be sludge containing cadmium in excess of 1 mg/1, are "hazardous" presents a question of law. *See Kress Packing Co. v. Kottwitz,* 61 Wis. 2d 175, 179, 212 N.W.2d 97, 99 (1973). The conclusion that the sludge is a hazardous waste was initially made by the DNR. Although the determination involves the applica-

tion of a statute to the facts, a question of law, this determination involves administrative expertise to which we give deference. *See Klusendorf Chevrolet-Buick v. LIRC*, 110 Wis. 2d 328, 331, 328 N.W.2d 890, 892 (Ct. App. 1982).

James Reyburn, a DNR employee, stated in his affidavit that wastewater treatment sludge, spent plating bath solutions, plating bath sludge and spent stripping and cleaning bath solutions from electroplating processes where cyanides are used are listed as hazardous wastes under Wis. Adm. Code sec. NR 181.16(2) and given EPA hazardous waste identification numbers F006, F007, F008 and F009 respectively; and that cadmium concentrations in excess of 1 mg/1 are identified hazardous wastes under sec. NR 181.15(5).

Zenner argues that the F006 standard excludes zinc plating. We disagree. Section NR 181.16 defines the F006 standard as "[w]astewater treatment sludges from electroplating operations, except from the following processes: . . . zinc plating (segregated basis) on carbon steel . . .." The term "zinc plating (segregated basis)" refers to non-cyanidic zinc plating processes. 51 Fed. Reg. 43,351 (1986) (to be codified at 40 C.F.R. sec. 261). It has been established as an undisputed fact that Better Brite used cyanide in its zinc plating process, thus the sludges fit into the F006 standard and are hazardous as determined by DNR testing. Since the wastes are hazardous under at least one standard, we need not address Zenner's arguments concerning the applicability of the F007, F008 and F009 standards.

We also reject Zenner's contention that Better Brite was not a generator of waste, as the term is used in ch. 144, Stats., and therefore it did not have to comply with the requirements for one generating waste. Section

144.61(4) defines generation as "the act or process of producing hazardous waste but *does not include any manufacturing process.*" (Emphasis supplied.) Zenner contends that because Better Brite is a plating operation, which is in essence a manufacturing process, it does not fall into the definition of a generator. The term "generator" is defined in sec. NR 181.04(42) as "any person, by generation site, whose act or process produces a hazardous waste . . .." Where statutory language is plain and clearly understood, that meaning must be given to the statute. *Abraham v. Milwaukee Mut. Ins. Co.,* 115 Wis. 2d 678, 680, 341 N.W.2d 414, 416 (Ct. App. 1983). These two definitions together plainly set out that "generation" occurs when the material ceases to be part of the manufacturing process and that if the wastes produced once the materials are no longer in the manufacturing process are listed as hazardous in the administrative code, the facility producing the waste is a "generator" subject to ch. 144 requirements. Accordingly, if the contents of the barrels were still a part of the zinc plating process, the wastes would not be subject to regulation under ch. 144. Because barrels of sludge at issue here contain hazardous waste produced by Better Brite once the zinc plating manufacturing process had ceased, ch. 144 applies.

Zenner next argues that the wastewater pretreatment facility is governed by ch. 147, Stats., thus it is not a treatment facility regulated by ch. 144, Stats. We also reject this argument. Section 144.61(14) defines a treatment facility as:

> a facility at which hazardous waste is subjected to treatment and may include a facility where hazardous waste is generated. This term does not include a waste water treatment facility whose discharges are regulated under ch. 147 unless the facility is required

> to be permitted as a hazardous waste treatment facility under the resource conservation and recovery act.

This statute exempts a wastewater treatment facility operator from the requirements of sec. 144.64(2)(am) to obtain a license to treat hazardous wastes when a permit has been granted under ch. 147 to discharge treated wastewaters from the system. Because it does not appear from the record that a permit under ch. 147 has been granted, this argument is irrelevant.

Even if Better Brite obtained a permit under ch. 147, Stats., the solid wastes generated from the system are still regulated by ch. 144, Stats. Because this case deals with Better Brite's solid waste, not the wastewaters, ch. 144 applies.

Zenner also asserts that decisions of the bankruptcy court bar the state's claims under principles of res judicata. We disagree. Prior to the entry of the challenged summary judgment, the United States Bankruptcy Court for the Eastern District of Wisconsin issued its decision in the ch. 7 bankruptcy of Better Brite. *In re Better Brite Plating,* 105 Bankr. Rep. 912 (Bankr. E.D. Wis. 1989). That decision declined to impose liability on either the bankrupt estate, Better Brite or one of its secured creditors, a Green Bay bank, for the costs of cleanup under state and federal environmental laws. The bankruptcy court also permitted the trustees to abandon the property. The federal court did not address the question of personal liability of a trustee for civil forfeitures.

██ ██

The doctrine of res judicata states that a final judgment is conclusive in all subsequent actions between the same parties as to all matters that were litigated or that might have been litigated in the former proceedings. *Barbian v. Lindner Bros. Truck. Co.,* 106 Wis. 2d 291, 296, 316 N.W.2d 371, 374 (1982). The personal liability

of the trustee for civil forfeitures under state law was not before the bankruptcy court. That issue is therefore not barred by the doctrine of res judicata.

Finally, we address the issue of the personal liability of a bankruptcy trustee to pay civil forfeitures and the cleanup costs for failing to obtain a toxic waste facility license. The HWMA itself imposes penalties on a strict liability basis without proof of purposeful or even negligent conduct: "No person may . . . [o]perate a hazardous waste facility without an . . . operating license . . .." Section 144.64(2)(am)2, Stats. As an apparent concession to a considerable body of case law, however, the state does not seek to impose personal liability on a strict responsibility basis. Rather, the state concedes that only upon a showing of a negligent failure to obtain the license can it enforce the statute against the trustee in his individual capacity. Zenner, Matyas and the amicus, meanwhile, assert that an even more stringent protection applies: A trustee is protected absent a showing that his failure to obey the law was intentional or deliberate. The circuit court concluded that bankruptcy trustees were "personally liable for willful, intentional or negligent violations of the State's laws . . .."

The state's concession, the trustee's assertion and the circuit court's conclusion reached despite the plain language of the HWMA are a tacit recognition that federal bankruptcy law must be accommodated when it conflicts with areas covered by the state's environmental laws.

The problem of conflict between the federal bankruptcy law and the state's police power, especially as that power relates to the recent explosion in toxic waste litigation and the enormous costs of cleanup, is well documented. *See* Sward, *Resolving Conflicts Between Bankruptcy Law and the State Police Power*, 1987 Wis. L.

Rev. 403. The number of cases dealing with the bankruptcy law/police power conflict is reflected in West's Bankruptcy Law Digest. A list of such cases fills some fifty-six pages in the digest as of 1987. Sward, *supra,* at 426 n.120.

To further muddy the waters, there is no definitive judicial statement resolving the question of personal liability of bankruptcy trustees generally, let alone in context of enforcement of a strict liability licensing statement. Instead, the case law is largely contradictory and confusing. *See generally* Tiller, *Personal Liability of Trustees and Receivers in Bankruptcy,* 53 Am. Bankr. L.J. 75 (1979).

To sort through this confusion, we must resort to fundamentals. The United States Constitution gives Congress the power to establish uniform laws on the subject of bankruptcies throughout the United States. U.S. Const. art. I, sec. 8, cl. 4. In the course of interpreting the bankruptcy laws enacted pursuant to this constitutional provision, the Supreme Court has frequently placed restrictions upon otherwise valid police power regulations of the states. Thus, for example, in *Ohio v. Kovacs,* 469 U.S. 274 (1985), a state court injunction ordering a defendant to clean up a waste disposal site was interpreted as a "liability on a claim" and subject to discharge in bankruptcy even after the state had appointed a receiver to take charge of the property and comply with the injunction. *Id.* at 282–83.

Bankruptcy law bears a close affinity to principles of equity. In those areas where the bankruptcy code has failed to define the powers and duties of bankruptcy officials, the courts have applied the rule that proceedings in bankruptcy are in the nature of proceedings in equity. *Imperial Assur. Co. v. Livingston,* 49 F.2d 745, 748 (8th Cir. 1931). The equitable authority of courts is

a corollary of the inherent authority doctrine. *In re E.C.,* 130 Wis. 2d 376, 388, 387 N.W.2d 72, 77 (1986).

In one of the few cases to reach the United States Supreme Court on the issue of the personal liability of a bankruptcy trustee, *Mosser v. Darrow,* 341 U.S. 267 (1951), the Court invoked a principle of equity to impose liability, stating: "Equity tolerates in bankruptcy trustees no interest adverse to the trust." *Id.* at 271. Thus, the Court upheld the personal liability of a trustee who had deliberately permitted his agents to profit from the trading of securities owned by the bankrupt estate.

In its interpretation of *Mosser,* the tenth circuit in *Sherr v. Winkler,* 552 F.2d 1367 (10th Cir. 1977), ruled that a trustee or receiver in bankruptcy is liable personally *only* for acts determined to be willful and deliberate in the violation of his duties. *Id.* at 1375. *Sherr* has been cited with approval in dictum in the seventh circuit. *In re Chicago Pacific Corp.,* 773 F.2d 909, 915 (7th Cir. 1985).

There can be no doubt that the courts have consistently extended greater protection to bankruptcy trustees than that afforded common-law trustees. Thus, for example, in a decision written by Justice Augustus Hand, *Ziegler v. Pitney,* 139 F.2d 595 (2d Cir. 1943), the court noted that unlike a common-law trustee who is liable for the negligence of his agents under the doctrine of respondeat superior, a bankruptcy trustee is exempt from personal liability for the negligence of his agents unless the trustee acts outside the scope of his authority. *Id.* at 596. The basis for the disparity between bankruptcy trustees and ordinary trustees is public policy and a recognition of the exceptional complications of bankruptcy proceedings. *Sherr,* 552 F.2d at 1376.

*Sherr* probably errs when it says a bankruptcy trustee is *never* personally liable for acts of negligence

toward the estate or third persons. *See Tiller, supra* p. 13. Nevertheless, it is most inequitable to expose the trustee to personal liability for the potentially severe penalties and cleanup costs for acts that were done without purposeful disregard of the law. The HWMA provides forfeitures of up to $25,000 for each day of violation. The bankruptcy court indicated cleanup costs at Better Brite could reach $400,000 or more.

According to the findings and decision of the bankruptcy court, made a part of the record here, the state was aware of serious environmental problems at Better Brite since 1980 or earlier. The state vigorously pursued a solution to the toxic waste accumulation from the time of its creation in 1986 in both the state and federal courts. It sought to collect cleanup costs from estate assets, tried to remove Zenner as trustee and unsuccessfully opposed the ultimate decision by the trustee to abandon the contaminated assets of the estate. Despite the extensive adversary proceedings, so far as we can determine, licensing requirements were never raised until this complaint was filed in 1988. If we add to the equitable equation the potential devastating impact personal liability would have upon the pool of persons willing to serve as trustees in toxic waste cases, fairness demands that the government prove deliberate conduct as an element of personal liability.

The state, however, also relies upon 28 U.S.C. sec. 959(b) (Supp. 1990) as proof of Congress' intent to hold trustees personally liable for violations of state law. That statute requires a trustee to "manage and operate the property in his possession . . . according to the requirements of the valid laws of the State . . .." This statute is found in Title 28 of the United States Code dealing with the federal judiciary and judicial procedure. Neither the

statute itself nor the cases dealing with it suggest a Congressional intent to impose *personal liability. See Midlantic Nat'l Bank v. New Jersey Dept. of Env. Prot.,* 474 U.S. 494 (1986).[3]

Further, there is an inherent inconsistency between the state's concession that negligence must be proven as an element of liability and its interpretation of sec. 959(b). If that statute is meant to impose personal liability for violation of state law, then it follows that the strict liability statute involved here, sec. 144.64, Stats., is enforceable without proof of either negligence or intent.

Proof that Zenner and Matyas knowingly and intentionally failed to obtain a license is an element in the state's case and, therefore, we remand for further proceedings. Where a party's intent is an issue, summary judgment is generally inappropriate. *Arnold v. Shawano County Agri. Soc.,* 106 Wis. 2d 464, 469–70, 317 N.W.2d 161, 164 (Ct. App. 1982).

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded. No costs on appeal.

---

[3]Because we conclude that sec. 959(b) has no bearing on personal liability, we need not address whether Matyas as a ch. 7 liquidation trustee does not "manage and operate the property."