**John RICHARDS, as Conservator and Guardian of the Estate of Leonard Richards, Plaintiff,**

v.

**MICHELIN TIRE CORPORATION, Defendant.**

**Civ. A. No. 88–1022–P–C.**

United States District Court, S.D. Alabama, S.D.

March 12, 1992.

James A. Yance, David G. Wirtes, Jr., Mobile, Ala., for plaintiff.

William H. Hardie, Mobile, Ala., for defendant.

ORDER ON DEFENDANT MICHELIN TIRE CORPORATION'S MOTION FOR JUDGMENT AS A MATTER OF LAW WITH REFERENCE TO THE GROUNDS SET OUT IN "D"

PITTMAN, Senior District Judge.

At the close of evidence in the trial of this cause, the defendant, Michelin Tire Corporation, moved for a judgment as a matter of law based on a number of grounds. With the exception of grounds "A" and "H," which were withdrawn by the defendant because they were moot, the court denied the motion on all grounds. The court deems it advisable to address in detail the "preemption" issue concerning the National Traffic and Motor Vehicle Safety Act of 1966 (NTMVS) raised in ground "D" of the motion. Prior to trial, the plaintiff filed a motion to strike the defense. The Magistrate Judge (MJ) submitted a recommendation holding that he

could perceive no harm in the plaintiff awaiting a final decision on whether this defense should be struck until after the presentation on all evidence. The plaintiff has filed a written objection to the MJ's recommendation, asserting that the MJ should have addressed the merits of the defense in order to allow for an efficient disposition of this issue (doc. # 207).

After the MJ submitted his recommendation and prior to trial, an oral hearing was held on February 3, 1992, on several pending motions in this cause, including the plaintiff's objections to the MJ's recommendation. The court, at that time, advised the parties that out of an abundance of caution it would follow the MJ's recommendation and withhold ruling on the plaintiff's motion to strike the preemption defense until the close of all evidence at trial. *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181 (3rd Cir.1986). The court advised counsel for both parties not to contend before the jury that the plaintiff was or was not preempted by federal regulations. The court ruled it would allow the parties to present evidence and argue to the jury that the defendant's compliance with the federal regulations was evidence of due care. *Dorsey v. Honda Motor Co., Ltd.*, 655 F.2d 650 (5th Cir., Unit B, 1981).

 Now that all the facts having any bearing on the preemption issue have been presented in this trial, the court strikes the preemption defense for the reasons set out hereinbelow. The supremacy clause requires that all conflicts between federal and state law be resolved in favor of the federal rule. *U.S. Const.* art. VI, cl. 2. There are three ways in which state laws may be preempted. First, Congress may preempt state law through the express language of the applicable statute. Second, despite a lack of express language, the courts may infer that it is Congress' intent to occupy the entire field of regulation through the enactment of a comprehensive statutory scheme which completely excludes state law. Third, even where Congress has not occupied the entire regulatory field, state law may be implicitly preempted to the extent that it directly conflicts with or interferes with a federal regulatory scheme. *See International Paper Co. v. Oullette*, 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). The court will address whether the statute and safety regulations in question preempt the plaintiff's failure to warn claim under each of these three forms of preemption.

Before considering the merits, however, the court will address the impact of the *Cipollone* litigation on this case. In *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181 (3rd Cir.1986), *later proceeding*, 893 F.2d 541 (1990), *cert. gr.* ─── U.S. ───, 111 S.Ct. 1386, 113 L.Ed.2d 443 (1991), the Third Circuit held that the *Federal Cigarette and Labelling and Advertising Act* did not preempt all state common law tort causes of action which could be brought against cigarette manufacturers. The case has been argued once to the Supreme Court, and due to the recent appointment of Justice Clarence Thomas, was reargued to the Supreme Court January 13, 1992. The defendant in this case has moved for a continuance pending the Supreme Court's decision in *Cipollone*. While the court is aware that *Cipollone* is a preemption case, the court finds that the facts and issues raised in that body of litigation to be wholly distinguishable from the case at hand. *Cipollone* involves an entirely separate statutory scheme, with very different purposes and Congressional intentions, separate and apart from the statutory scheme at issue in this case. At the hearing held on February 3, 1992, the court informed the parties that it would not continue this cause due to the *Cipollone* case.

## EXPRESS PREEMPTION

 The court finds *Taylor v. General Motors Corp.*, 875 F.2d 816 (11th Cir.1989), *cert. denied*, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990), controlling on the issue of express preemption. In *Taylor*, the plaintiffs brought a negligent design claim under Florida state law against the defendant for its failure to place airbags in its car. *Id.* at 817. After concluding the Florida courts would recognize such a claim, the Eleventh Circuit turned to the

issue of whether the claim was expressly preempted by the safety standards promulgated by the National Highway Transportation Safety Administration (NHTSA) pursuant to the *National Traffic and Motor Vehicle Safety Act of 1966*, 15 U.S.C. § 1381, *et seq.* ("NTMVS"). The court noted that the NTMVS was passed in 1966 in response to the " 'soaring rate of death and debilitation on the Nation's highways.' " *Id.* at 822 (*quoting* S.Rep. No. 1301, 89th Cong., 2d Sess. 1, *reprinted in* 1966 U.S.C.C.A.N. 2709). The defendant in *Taylor* argued that NTMVS' preemption clause expressly foreclosed any state regulation in the field of automotive safety standards. *Id.* at 823–24. The preemption clause of the NTMVS, 15 U.S.C. § 1392(d) states that

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

The *Taylor* court, however, found this clause did not expressly preempt the plaintiffs' state law claims because the NTMVS also contains a "savings clause" which must be read in conjunction with section 1392(d). The "savings clause," 15 U.S.C. § 1397(c) states that

> Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law.

In reconciling these two clauses, the Eleventh Circuit refused to narrowly interpret the "savings clause" to indicate that the NHTSA safety standards are exclusive, but not exhaustive in the area of automotive safety. *Id.* at 824. The court held that such an interpretation would render the "savings clause" a mere redundancy because the "preemption clause itself provides that where a federal standard does not govern 'the same aspect of performance' as the state standard, the state standard is not preempted." *Id.* Rather than "render an entire section of the Safety Act superfluous," the Eleventh Circuit held the NTMVS does not expressly preempt state law tort causes of action involving safety of automobiles and their component parts. *Id.* at 824–25.

The same Act and preemption clause applied by the Eleventh Circuit in *Taylor* are at issue in the case *sub judice.* Michelin is correct that the "savings clause" does not apply to the issue of implied preemption (doc. #205, p. 4); however, in the context of the express preemption issue, it is decisive. Based on the Eleventh Circuit's decision in *Taylor,* the court finds that the plaintiff's claims are not expressly preempted by the NTMVS.

### IMPLIED PREEMPTION: "Occupying the field"

■ In the absence of express preemption by Congress, the court may infer an intent to preempt all state law regulations where the statutory scheme established by Congress is so comprehensive that it leaves no room for supplementary state regulation. *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). In order to determine whether a statute governs an entire field of regulation, the court must ascertain the *intent* underlying the statute. *Hillsborough County,* 471 U.S. at 714, 105 S.Ct. at 2375. The court finds that the statutory scheme of the NTMVS does not occupy the entire regulatory field of automotive safety.

The Congressional intent behind the NTMVS clearly establishes that the Act was not intended to supplant state tort claims.

> Section 108(c) ... provides that compliance with any Federal motor vehicle safety standard does not exempt a person from any liability under the common law.

H.R.Rep. No. 1776, 89th Cong., 2d Sess. at 24 (1966).

> "We have preserved every single common law remedy that exists against a manufacturer for the benefit of a motor vehicle purchaser."

112 Cong.Rec. 19,663 (1966) (*quoting* Rep. Dingell). The statutory scheme in 15 U.S.C. § 1381, *et seq.* does not evince an intent to reserve the entire field of automotive safety regulation to the Federal government. Lawsuits involving automotive defects are common in modern tort law. Moreover, in the nearly twenty-six years since its enactment, the NTMVS has never been held to completely occupy the field of regulation.

The court also finds that the safety standards relied upon by the defendant do not comprehensively occupy the field of regulation. The Supreme Court has held that

> We are even more reluctant to infer pre-emption from the comprehensiveness of regulations than from the comprehensiveness of statutes. As a result of their specialized functions, agencies normally deal with problems in far more detail than does Congress. To infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive. Such a rule, of course, would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisprudence.

*Hillsborough County*, 471 U.S. 707, 717, 105 S.Ct. 2371, 2377 (citations omitted).

While the safety regulations in question do speak to label information appearing on tires and rims (*See* 49 C.F.R. § 571.119, subpart S6.5), the court finds that these regulatory requirements are not so comprehensive as to occupy the entire field of label regulation for tires. The safety regulations in question require testing by tire manufacturers with regard to the endurance, strength, speed and load capacity of the tires. In fact, the overwhelming majority of the safety regulations' provisions are devoted to these testing requirements and the methods of testing. The court finds that the purpose of the safety regulations is to require tire manufacturers to conduct tests on the performance of their products and to place labels on the tires to reflect the results of these tests. This statutory scheme enables retailers and consumers to select the tire which performs the best in light of their individual needs, desires, and demands by having adequate performance information at their disposal. The regulations never address the hazards of tire mounting. The intent behind this statutory scheme is not to preempt all other forms of labelling, it is only to assist tire purchasers in the selection of their tires by providing adequate information regarding product performance.

The defendant also cites the NHTSA's recent decision to not amend the above requirements to include information regarding tire and rim mismatching as proof of the regulations' comprehensive nature. *See* 56 *Fed.Reg.* 41815–6 (August 23, 1991). The agency found the problem of mismatching a tire with the wrong size rim did not warrant a change in the regulatory standard listed above. The agency found the proposed change to be not "necessary" in light of the economic costs to the industry. *Id.* The court finds the defendant's position unpersuasive. The safety standards provide several pieces of information to be given by tire markings (*infra.*, p. 964); however, the standards do not provide that the list is exclusive. Moreover, the safety standards were promulgated pursuant to the NTMVS, which clearly does not occupy the entire field of regulation. Finally, the Agency's decision to decline to regulate is not evidence of comprehensive regulation. On the contrary, the Agency decided not to enter the field with regard to this safety issue. If the court were to hold that the states are precluded from regulating because of an agency's decision to not act, our system of federalism would no longer exist. *See Hillsborough County*, 471 U.S. at 717, 105 S.Ct. at 2377.

IMPLIED PREEMPTION: "Specifically conflicts with regulation"

██ Federal law preempts state law to the extent that the ordinary application of the two laws creates a conflict. *Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union*, 468 U.S. 491, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984). The court looks to the *effects* the operation of the state law has on the federal regulatory scheme to determine if there is this form of

implied preemption. *Taylor v. General Motors Corp.*, 875 F.2d 816, 826 (11th Cir. 1989). The court begins by noting that there is no conflict between two specific regulations. The defendant admits that the NHTSA declined to regulate the placement of information on tires regarding a risk of mismatch (*See* doc. # 205). There is no specific regulation or statute prescribing the method or form of information to be given regarding mismatch of tires and rims; therefore, there is no specific conflict between competing warning requirements regarding the mismatch hazard.

The court also finds the plaintiff's cause of action does not adversely effect or interfere with the statutory scheme of the NTMVS or the safety regulations. The NTMVS establishes "minimum *performance* standards" in automobiles and their component parts in order to "reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." 15 U.S.C. § 1381 (emphasis added). The provision of the NTMVS dealing with pneumatic tires, 15 U.S.C. § 1421, instructs the Agency to require tires to have permanent labels containing certain information, including a recital that the tire "conforms to Federal *minimum safe performance* standards...." 15 U.S.C. § 1421(5) (emphasis added). Although this issue turns on the effects the plaintiff's claim has on the statutory scheme, it is necessary to recognize that the federal scheme creates minimum *performance* standards in order to gauge the claim's impact.

Section 571.119, Subpart 6.5 requires that tire markings give the (1) symbol DOT; (2) the tire ID number; (3) tire designation; (4) maximum load rating; (5) speed restriction; (6) numbers of piles and the ply composition; (7) words "tubeless" or "tube type;" (8) words "regroovable" and "radial" if applicable; and (9) the tire's load range. As the court has noted above, the thrust of this label requirement is to provide consumers with performance information about each tire. The court finds that the warning a plaintiff contends should be required does not impact upon or interfere with the informational requirements listed above. A warning regarding a specific hazard of rim mismatch is unrelated to the information listed above; therefore, the chance for confusion is minimal.

The defendant nevertheless argues that the plaintiff's claims are preempted because of the holdings in various "airbag litigation" cases, including *Taylor v. General Motors, Inc.*, 875 F.2d 816 (11th Cir. 1989). While the undersigned has held that *Taylor* controls the question of express preemption, it is distinguishable on the issue of implied preemption. Congress specifically gave manufacturers the option of placing either passive seatbelt restraints or airbags in their automobiles. *Id.* at 826 (*citing Safety Act and Safety Standard 208*). In *Taylor*, the court held that this enactment prevented a state tort claim against a manufacturer for failing to install an airbag, because Congress affirmatively granted the manufacturer the option of not installing the airbag. *Id.* at 826–28. Congress has not created a special right or option with regard to tire labelling; therefore, the undersigned finds *Taylor* and the other "airbag" cases distinguishable.

Therefore, for the reasons stated herein, it is hereby ORDERED, ADJUDGED, and DECREED that the defendant's motion for judgment as a matter of law with regard to ground "D" is DENIED. The other grounds raised by the defendant in its motion for judgment as a matter of law have been denied and will not be further addressed by the court.