Christine A. BOYLE, Plaintiff-Respondent,†

v.

CHRYSLER CORPORATION, Defendant-Appellant,

Richard NASH and Washburn County, Defendants.

Court of Appeals

*No. 92–1961. Submitted on briefs April 1, 1993.—Decided
May 18, 1993.*

(Also reported in 501 N.W.2d 865.)

†Petition to review filed.

208

211

212

For the defendant-appellant the cause was sub-mitted on the briefs of *William P. Croke* and *Dorothy H. Dey* of *Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.* of Milwaukee and *James A. Hourihan* and *Terri A. Steinhaus* of *Hogan & Hartson* of Washington, D.C.

For the plaintiff-respondent the cause was submitted on the brief of *De Bardeleben & Associates* and *Daniel Snyder* of Park Falls.

Before Cane, P.J., Myse and Schudson, JJ.

MYSE, J. Chrysler Corporation appeals a trial court order denying its motion seeking to dismiss that portion of Christine Boyle's claim attributing her injuries to Chrysler's failure to equip her automobile with an airbag or other passive restraints. Chrysler also appeals the trial court's refusal to preclude the admission of evidence regarding the absence of an airbag or other passive restraints.[1] Because we conclude that compliance with the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. § 1381 (1982), and the Federal Motor Vehicle Safety Standard 208, 49 C.F.R. § 571.208 (1979) (collectively, "the federal Act") pre-empt state law claims based on the absence of airbags or other passive restraints, the order is reversed with directions to enter an order precluding admission of evidence regarding the absence of an airbag or other passive restraints.

The facts are undisputed. In August 1987, Boyle was driving a 1980 Plymouth Horizon. Although the

---

[1] We granted leave to appeal this nonfinal order on August 20, 1992.

car was equipped with a manual combination lap and shoulder belt for the driver's seat, Boyle was not wearing the seat belt. At a curve in the road, Boyle's vehicle went into a ditch and rolled over, throwing Boyle from the vehicle and injuring her.

Boyle filed a lawsuit against Chrysler and others claiming, among other things, that because the 1980 Plymouth Horizon lacked an airbag or other passive restraints, it was defectively designed and manufactured, making it unreasonably dangerous to users. Chrysler moved for partial summary judgment under sec. 802.08, Stats., seeking dismissal of the portion of Boyle's claim based on the absence of passive restraints. At oral argument and in a subsequent letter brief Chrysler requested, in the alternative, an order under sec. 802.11(1)(a), excluding evidence of the lack of passive restraints in Boyle's car.

The trial court addressed only the motion for partial summary judgment and treated it as one under sec. 802.08, Stats. The court concluded that the motion for partial summary judgment was improper because Boyle's contentions concerning the lack of passive restraints in her car was one aspect of her personal injury claim and not a separate cause of action. The court therefore denied Chrysler's motion without addressing the preemption issue raised in its request for a sec. 802.11(1)(a), order precluding evidence of the lack of passive restraints in Boyle's car.

## PROCEDURE

 Chrysler Corporation first contends that the trial court erred by refusing to grant an order excluding evidence regarding the lack of passive restraints. Boyle argues that because the motion requested only a par-

tial summary judgment, Chrysler has waived the sec. 802.11(1)(a), Stats., issue. We reject Boyle's waiver argument. Chrysler's claim that evidence of the lack of passive restraints should be excluded because federal statutes preempt that portion of Boyle's claim was clearly raised by the substance of the motion, in Chrysler's letter brief and during oral argument. In fact, Boyle responded to the letter brief, and the court referred to the brief in its memorandum decision. In the past, we have looked beyond the form or designation of a motion to its substance to determine what relief was sought and whether the motion was meritorious. *See, e.g., In re T.M.S.*, 152 Wis. 2d 345, 353–54, 448 N.W.2d 282, 285–86 (Ct. App. 1989). Thus, we conclude that the issue was raised before the trial court.

Because the bases of a claim may not be fragmented by a summary judgment, the trial court concluded that it could not grant the relief Chrysler sought. Apparently relying on the same reasoning, the court refused to exclude evidence regarding the lack of passive restraints under sec. 802.11(1)(a), Stats. We conclude that the trial court erred when it concluded that the relief Chrysler sought was unavailable. A misapplication or erroneous view of the law constitutes an erroneous exercise of discretion. *See State v. Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968).

"Where certain factual and legal matters are capable of resolution prior to trial . . . a pretrial order . . . is the appropriate method to define and simplify the issues that remain for trial." *State v. Better Brite Plating, Inc.,* 160 Wis. 2d 809, 813, 466 N.W.2d 239, 243 (Ct. App. 1991), *modified on other grounds*, 168 Wis. 2d 363, 483 N.W.2d 574 (1992). Section 802.11(1)(a),

Stats., granting the court authority to "[d]efin[e] and simplif[y] . . . the issues of fact and law," empowers the court to exclude evidence that does not provide a basis for granting relief. Section 802.11(1)(a) therefore permits the court to reach the preemption issue and to order the exclusion of evidence of the absence of passive restraints if it concludes that federal law precludes that basis for recovery. A sec. 802.11(1)(a) order limiting the issues and evidence at trial promotes judicial efficiency and saves the parties' time, effort and cost. If federal law preempts a claim based on the lack of passive restraints, the plaintiff cannot prevail on that basis. The trial court should rule on this issue before trial to determine whether this evidence is relevant so that the parties are spared the time and expense accompanying the presentation of evidence and expert testimony that is irrelevant to any lawful basis for the plaintiff's right to recovery. Because our resolution of this question is dispositive of the procedural issue, we need not address whether partial summary judgment was available. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

## EXPLICIT PREEMPTION

Chrysler first contends that it is entitled to an order excluding evidence concerning the 1980 Plymouth Horizon's lack of passive restraints because the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. § 1392(d) (1982), and the Federal Motor Vehicle Safety Standard 208, 49 C.F.R. § 571.208 (1979) explicitly preempt such claims.

15 U.S.C. § 1392(d) (1982) provides in part:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

The federal safety standard for occupant restraints in automobiles manufactured during specific time periods is found in 49 C.F.R. § 571.208. The code lists the options for meeting the safety requirements for cars manufactured between September 1, 1973, and September 1, 1986. One of the options is the manual lap and shoulder seat belts for each front outboard seating position, with which the 1980 Plymouth Horizon was equipped. Because Chrysler elected to equip the Horizon with restraints authorized by the code, it is within the purview of the explicit preemption provision prohibiting states from requiring different restraints.

Boyle contends that because the explicit preemption clause does not specifically preempt common-law claims, they are not explicitly preempted. However, the United States Supreme Court recognized that, for purposes of preemption law, "the phrase 'state law' . . . include[s] common law as well as statutes and regulations." *Cipollone v. Liggett Group, Inc.*, 112 S.Ct. 2608, 2620 (1992). Therefore, the federal Act explicitly preempts any state motor vehicle safety standards, including those established through the imposition of common-law liability, that are in conflict with the federal standards.

217

Other jurisdictions that have construed the federal Act have held that "no air bag" claims similar to Boyle's are expressly preempted because they would impose a standard in conflict with the federal standards, even though common-law claims are not specifically preempted. *See Vanover v. Ford Motor Co.*, 632 F.Supp. 1095, 1096–97 (E.D. Mo. 1986); *Cox v. Baltimore County*, 646 F.Supp. 761, 763 (D. Md. 1986); *Wickstrom v. Maplewood Toyota, Inc.*, 416 N.W.2d 838, 840 (Minn. Ct. App. 1987). We find these cases and their analyses persuasive.

Boyle next contends that the savings clause in 15 U.S.C. § 1397(k) (1982) removes her lack of passive restraints claim from preemption under the explicit preemption provision. The savings clause provides: "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." We reject this reading of the savings clause because it would subvert the federal Act's statutory scheme. General savings clauses cannot be read to permit common-law actions that contradict and subvert a statutory scheme. *See Morales v. Trans World Airlines, Inc.*, 112 S.Ct. 2031, 2037 (1992). The savings clause does not operate to preserve common-law liability claims that conflict with the federal safety standards. Rather, the savings clause preserves only those common-law liability claims that do not conflict with the automobile safety equipment standards that Congress enacted.

We note that other jurisdictions have held that the savings clause preserves state common-law actions that do not conflict with the federal Act's explicit preemption of non-identical motor vehicle safety

standards. For example, the savings clause preserves from preemption common-law actions concerning failure to warn, *Richards v. Michelin Tire Corp.*, 786 F.Supp. 959, 961–62 (S.D. Ala. 1992), and defectively designed and manufactured airbags. *Perry v. Mercedes Benz of North America, Inc.*, 957 F.2d 1257, 1263–64 (5th Cir. 1992). However, we have found no case that permits a common-law claim that conflicts with the federal Act's explicit preemption of non-identical motor vehicle safety standards. The caselaw from other jurisdictions supports our conclusion that the savings clause preserves only those common-law claims that do not conflict with the federal safety standards. Because Boyle's common-law liability claim based on the lack of passive restraints conflicts with the federal safety standards, we conclude that the savings clause does not preserve that portion of her claim, and that the federal Act explicitly preempts that portion of her claim.

## IMPLICIT PREEMPTION

As an alternative ground for our holding, we conclude that the federal Act implicitly preempts the portion of Boyle's claim based on the lack of passive restraints. A court will find implicit preemption where state law conflicts with Congress' objectives as reflected by the Act, *see Schneidewind v. ANR Pipeline Co.*, 485 U.S. 298, 300 (1988), or where state law interferes with the methods Congress has chosen to accomplish its intent, *see International Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987).

Congress' intent to enact a uniform, consistent safety standard concerning permissible restraints, applicable to all automobiles regardless of the state in

which they are manufactured or used, is clear from the plain language of the explicit preemption provision requiring that state motor vehicle equipment safety standards be identical to the federal standards. Congress has chosen to ensure and regulate automobile safety by affording manufacturers a choice among various occupant restraints. Allowing common-law claims based on the absence of passive restraints, where that absence is specifically authorized by the federal Act, not only conflicts with Congress' uniformity intent, but also interferes with the method Congress has chosen to accomplish that intent.

Authorizing the imposition of liability upon Chrysler for its decision to equip the 1980 Plymouth Horizon with manual lap and shoulder seat belts rather than with passive restraints effectively penalizes Chrysler for making a choice the federal Act expressly authorized. States may not impose common-law liability that denies Chrysler the choices the Act authorizes it to make. *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317–19 (1981).

Other jurisdictions that construed the two clauses have held that the federal Act implicitly preempts common-law defective design claims that conflict with the Act's standards. *See Wood v. General Motors Corp.*, 865 F.2d 395, 401 (1st Cir. 1988); *Taylor v. General Motors Corp.*, 875 F.2d 816, 827–28 (11th Cir. 1989); *Pokorny v. Ford Motor Co.*, 902 F.2d 1116, 1123 (3rd Cir. 1990); *Heath v. General Motors Corp.*, 756 F.Supp. 1144, 1150 (S.D. Ind. 1991); *Baird v. General Motors Corp.*, 654 F.Supp. 28, 31–32 (N.D. Ohio 1986). These cases conclude that allowing states to indirectly promulgate safety standards that differ from the federal standard by imposing common-law liability conflicts with Con-

220

gress' intent to preclude all safety standards that are not identical to the federal Act, as that intent is expressed in the explicit preemption provision.

Boyle argues that because the federal Act contains an explicit preemption clause that does not identify common-law claims, we may not engage in implicit preemption analysis concerning such claims. In support of that contention, Boyle cites the following language in *Cipollone*, 112 S.Ct. at 2618:

> When Congress . . . has included in the enacted legislation a provision explicitly addressing [the issue of preemption], and *when that provision provides a reliable indicium of congressional intent with respect to state authority*, . . . there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation. . . . Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted. (Emphasis added; citations and quotations omitted.)

*Cipollone* does not support Boyle's contention that her lack of passive restraints claim is not preempted. In *Cipollone*, the Court was interpreting the Federal Cigarette Labeling and Advertising and the Public Health Cigarette Smoking Acts, which do not contain preemption provisions comparable to the preemption provisions contained in the Act under consideration here. The cigarette Acts each contain only one preemption clause, and neither contains a savings clause. The Court noted that "*the other provisions* of the 1965 and 1969 [Federal Cigarette Labeling and Advertising and the Public Health Cigarette Smoking] Acts *offer no cause to look beyond [the express preemption provisions contained in] § 5 of each Act.*" *Id.* (Emphasis added.)

221

The Federal Motor Vehicle Safety Act, however, contains two clauses dealing with preemption, one of which is a savings clause that apparently conflicts with the explicit preemption clause. To give effect to the entire Act, we must look at the explicit preemption clause together with the savings clause and construe them harmoniously. *See Pella Farmers Mut. Ins. Co. v. Hartland Richmond Town Ins. Co.*, 26 Wis. 2d 29, 41, 132 N.W.2d 225, 230 (1965). Because the explicit preemption clause and the savings clause appear to conflict, neither clause "provides a reliable indicium of congressional intent with respect to state authority." The existence of two clauses dealing with preemption that appear to conflict compels us to look beyond the express preemption provision. Therefore, *Cipollone* does not limit us to consider only whether the Federal Motor Vehicle Safety Act explicitly preempts Boyle's lack of passive restraints claim.

In summary, the Federal Motor Vehicle Safety Act explicitly preempts Boyle's lack of passive restraints claim because that claim conflicts with the federal Act's statutory scheme. As an alternative ground for our holding, even if it were determined that the federal Act does not explicitly preempt the portion of Boyle's claim based on the absence of passive restraints, that portion of her claim is implicitly preempted because it conflicts with Congress' intent manifested in the explicit preemption provision. We therefore reverse the order and direct the trial court to enter an order precluding admission of evidence regarding the absence of an airbag or other passive restraints.

*By the Court.*—Order reversed and cause remanded with directions.