NELSON, Appellant,

v.

FORD MOTOR COMPANY, Appellee, et al.

[Cite as *Nelson v. Ford Motor Co.* (1996), 108 Ohio App.3d 158.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 94–L–106.

Decided March 8, 1996.

[REDACTED]

*Robert W. Kerpsack; Coben & Ryan* and *Larry E. Coben; John D. Liber*, for appellant.

*Thompson, Hine & Flory* and *Elizabeth B. Wright; Malcolm E. Wheeler*, for appellee.

JOSEPH E. MAHONEY, Judge.

This is an accelerated calendar appeal from a judgment of the Lake County Court of Common Pleas which granted summary judgment in favor of appellee, Ford Motor Company.

On May 6, 1991, appellant, Raymond Richard Nelson, was a passenger in a 1987 Ford Mustang driven by his friend, Gregory Mergen, in Athens County, Ohio. A vehicle traveling in the opposite direction crossed the center line and collided head-on with Mergen's Mustang. Although appellant was wearing the lap/shoulder belt provided as standard equipment in the Mustang, he still suffered a severe and permanent spinal cord injury.

On March 30, 1993, appellant filed suit against appellee, alleging, *inter alia*, that the Mustang it manufactured was defective because it did not contain a passive restraint system: specifically, a passenger-side air bag. Appellant's claim was based purely on state tort law. Appellant did not dispute that the Mustang's restraint system complied with federal regulatory requirements. Appellee moved for a partial summary judgment on the ground that the "no air bag" claim was preempted by federal law.

On June 22, 1994, the trial court granted appellee's motion for partial summary judgment, finding that federal law preempts any Ohio products liability claim based on the failure to install a passenger-side air bag in a 1987 Mustang.

Appellant timely appealed, and raises the following assignment of error:

"The trial court erred to the prejudice of plaintiff-appellant in granting partial summary judgment in favor of defendant-appellee Ford Motor Company, regarding any claims based on the lack of air bags in the 1987 Ford Mustang."

In the sole assignment of error, appellant contends that the 1987 Mustang was defective due to the lack of a passenger-side air bag. This court must determine whether the state's products liability standard is preempted by federal law.

A brief explanation of the federal law is in order. The United States Congress passed the National Traffic and Motor Vehicle Safety Act ("the Safety Act"), Section 1381 *et seq.*, Title 15, U.S.Code, in 1966. The declared purpose of the Safety Act was to establish safety standards to help reduce deaths and injuries from traffic accidents. Congress authorized the Secretary of Transportation to formulate safety standards to protect the motoring public from an unreasonable risk of accidents due to "the design, construction or performance of motor vehicles * * *." Section 1391. The Secretary of Transportation delegated the duty of writing Federal Motor Vehicle Safety Standards to the National Highway Transportation Safety Administration ("NHTSA").

Safety Standard 208, set forth in Section 571.208, Title 49, C.F.R., gave the manufacturer the option to use either safety belts or air bags for automobiles manufactured during the 1987 model year, such as Gregory Mergen's Mustang. Thus, a cause of action can proceed against the manufacturer for the failure to install an air bag in a 1987 automobile only if it is determined that the Safety Act does not preempt the state's product liability law.

Preemption of state law can occur in three types of situations: (1) where Congress explicitly preempts state law, (2) where preemption is implied because Congress has occupied the entire field, or (3) where preemption is implied because there is an actual conflict between federal and state law. *Schneidewind v. ANR Pipeline Co.* (1988), 485 U.S. 293, 108 S.Ct. 1145, 99 L.Ed.2d 316. The dispute focuses on whether the tort duty in a "no air bag" case is either expressly preempted by the Safety Act or impliedly preempted due to a conflict between state and federal law.

## EXPRESS PREEMPTION

To determine whether the Safety Act expressly preempts state tort law on this issue, we must look to the Safety Act itself, and determine whether the language " 'unmistakably' manifests an intent to preempt" appellant's tort claim. *Taylor v. Gen. Motors Corp.* (C.A.11, 1989), 875 F.2d 816, 823, certiorari denied (1990), 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783.

Section 1392(d) of the Safety Act details the preemptive effect federal motor vehicle safety standards were to have on state and local safety standards. It provides, in relevant part:

"Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard. Nothing in this section shall be construed as preventing any State from enforcing any safety standard which is identical to a Federal safety standard.  * * * "

Some courts have interpreted Section 1392(d) to expressly preempt "no air bag" design defect claims. *Boyle v. Chrysler Corp.* (App.1993), 177 Wis.2d 207, 216–219, 501 N.W.2d 865, 869–870; *Vanover v. Ford Motor Co.* (E.D.Mo.1986), 632 F.Supp. 1095, 1096–1097. Recognizing that an award of damages can have the same regulatory effect as a safety statute, those courts have interpreted "state law" as it is used in Section 1392(d) to include common-law liability standards as well as safety statutes and regulations. *Id.* Other courts, however, have been reluctant to equate tort liability with a safety regulation because Section 1392(d) fails to expressly mention common law or liability. *Pokorny v. Ford Motor Co.* (C.A.3, 1990), 902 F.2d 1116, 1121, certiorari denied (1990), 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113; *Taylor; Wood v. Gen. Motors Corp.* (C.A.1, 1988), 865 F.2d 395, 398, certiorari denied (1990), 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782; *Heath v. Gen. Motors Corp.* (S.D.Ind.1991), 756 F.Supp. 1144. The *Pokorny* court further explained that although common-law liability may sometimes have the same effect as state regulation, there are also many differences.

A more significant impediment to a finding of express preemption is the conflict between Section 1392(d) and the "savings clause" set forth in Section 1397(k), entitled "Continuation of common law liability." That section provides:

"Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from liability under common law."

Automobile manufacturers have repeatedly argued that this provision does not preserve all common-law liability claims, but only those that do not conflict with the standards enacted by Congress. This argument has been accepted only by a few courts. See, *e.g., Boyle,* 177 Wis.2d at 218–219, 501 N.W.2d at 869.

Most courts which have addressed this issue have refused to construe the savings clause so narrowly. See, *e.g., Taylor,* 875 F.2d at 824. As one court reasoned, such a construction would render Section 1397(k) a mere redundancy,

because Section 1392(d) provides that where a federal standard does not govern the same aspect of performance, a state standard is not preempted. *Id.* Interpreting the savings clause broadly so as to apply to all common-law liability claims, most courts have concluded that the Safety Act does not expressly preempt "no air bag" liability claims. See, *e.g., Pokorny; Taylor; Wood; Heath; Dallas v. Gen. Motors Corp.* (W.D.Tex.1989), 725 F.Supp. 902, 905.

Appellee briefly argues that there is no such conflict in Ohio because all products liability actions are now statutory. R.C. 2307.71 *et seq.;* therefore, appellee argues that the savings clause, which preserves only "common law" liability, does not preserve Nelson's "no air bag" claim. Even if we were persuaded by this argument that the savings clause does not "save" Nelson's statutory claim, we are not convinced that liability claims fall within the definition of "safety standard" as it is used in Section 1392(d). Therefore, we are unable to find express preemption.

## IMPLIED PREEMPTION

█ Implied preemption can be found where the state law conflicts with the federal statute by standing as an obstacle to the accomplishment of Congress' purpose. *Freightliner Corp. v. Myrick* (1995), 514 U.S. ——, 115 S.Ct. 1483, 131 L.Ed.2d 385.

█ Applying the reasoning of *Cipollone v. Liggett Group, Inc.* (1992), 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407, appellant contends that implied preemption cannot exist because Congress included an express preemption clause in the Safety Act. Citing previous Supreme Court decisions, *Cipollone* stated that when an express preemption provision provides a "reliable indicium of congressional intent with respect to state authority * * * there is no need to infer congressional intent to pre-empt state laws from the substantive provisions" of the statute. *Id.*

The express preemption clause, when read together with the savings clause, provides a "reliable indicium of congressional intent" to preserve common-law causes of action such as appellant's. The express preemption clearly preempts only conflicting state "safety standard[s]," while the savings clause expressly preserves "common law" liability. An examination of the legislative history reveals that the drafters of this legislation made a deliberate decision to preserve all common-law causes of action, not just those unaddressed by the safety standards.

The Senate Committee Report directly commented on this issue. The original Senate version did not contain any express reservation of common-law liability because the drafters believed there was no need for such a savings clause: "[T]he

Federal minimum safety standards need not be interpreted as restricting State common law standards of care. Compliance with such standards would thus not necessarily shield any person from product liability at common law." S.Rep. No. 1301, 89th Cong., 2d Sess. 12 (1966), 1966 U.S.Code & Adm.News 2709, 2720.

The House Committee was not satisfied that the Senate's version adequately preserved common-law liability, and, hence, added the savings clause. The House Committee Report explained that it "intended * * * that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law particularly those relating to warranty, contract, and tort liability." H.R.Rep. No. 1776, 89th Cong., 2d Sess. 24 (1966).

Therefore, this court finds that appellant's "no air bag" claim is not preempted by federal law. Because the trial court erred in granting partial summary judgment in favor of appellee, the assignment of error is with merit.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., and NADER, J., concur.