NELSON, Appellant and Cross–Appellee,

v.

FORD MOTOR COMPANY, Appellee and Cross–Appellant, et al.

[Cite as *Nelson v. Ford Motor Co.* (2001), 145 Ohio App.3d 58.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 99–L–203.

Decided July 23, 2001.

*Robert W. Kerpsack* and *Larry E. Coben,* for appellant and cross-appellee.

*Elizabeth B. Wright* and *Toni J. Querry,* for appellee and cross-appellant.

WILLIAM M. O'NEILL, Presiding Judge.

Appellant and cross-appellee, Raymond Richard Nelson, appeals from a judgment of the Lake County Court of Common Pleas in a product liability action he filed against appellee and cross-appellant, Ford Motor Company ("Ford"). Following a jury trial, judgment was entered in favor of Ford. The following facts are relevant to a determination of this appeal.

On May 6, 1991, appellant was the front seat passenger in a 1987 Ford Mustang being driven by Gregory Mergen ("Mergen"). Joshua Lanza ("Lanza") was riding in the back seat. The three men were students at Ohio University in Athens, Ohio, and they were returning to the campus after a brief trip home. In the early morning hours on that date, a vehicle traveling in the opposite direction crossed the center line and collided head-on with the Mustang. As a result of the collision, appellant suffered a severe and permanent spinal cord injury. It was disputed whether appellant was wearing the three–point seatbelt that was in the Mustang at the time of the accident.

On March 30, 1993, appellant filed the underlying complaint against Ford, Spitzer Ford, Inc., a local Ford dealer, and Charles Curfman, the driver of the vehicle that caused the collision. All claims against Spitzer Ford and Charles Curfman have since been dismissed. Appellant alleged that the design of the Mustang's restraint system was defective because there was no passenger-side air bag, and because the seatbelt was designed with a comfort feature built into it that allowed for slack in the shoulder-belt portion of the three–point system. Appellant also claimed that Ford had negligently tested the restraint system in the 1987 Mustang. Ford denied all liability.

On August 31, 1993, Ford filed a motion for partial summary judgment with respect to appellant's claim regarding the lack of a passenger-side air bag on the basis that it was preempted by the National Traffic and Motor Vehicle Safety Act and Federal Motor Vehicle Safety Standard 208. The trial court granted partial summary judgment in Ford's favor on this issue, and appellant filed an interlocutory appeal to this court. In *Nelson v. Ford Motor Co.* (1995), 108 Ohio App.3d 158, 670 N.E.2d 307, this court reversed and remanded the case. The Supreme Court of Ohio then certified a conflict between different districts in Ohio on the issue of air bag preemption. In *Minton v. Honda of Am. Mfg., Inc.* (1997), 80 Ohio St.3d 62, 684 N.E.2d 648, the Supreme Court of Ohio upheld our decision on this issue. Recently, however, the United States Supreme Court overturned that decision in *Geier v. Am. Honda Motor Co.* (2000), 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914, holding that "no air bag" claims conflict with Federal Motor Vehicle Standard 208 and are impliedly preempted by the

National Traffic and Motor Vehicle Safety Act. Thus, it is clear that appellant cannot prevail on his "no air bag" claim.

Upon remand to the trial court, the case proceeded to trial commencing July 7, 1999. On July 20, 1999, the jury rendered a verdict in favor of Ford. They specifically found that appellant was not wearing a seatbelt at the time of the accident. Judgment was entered on the jury's verdict on July 26, 1999. Juror fees of $1,500 were taxed as costs to Ford, the prevailing party. On August 9, 1999, appellant filed a motion for a new trial. On December 1, 1999, the trial court denied appellant's motion for a new trial.

Appellant timely filed a notice of appeal, and Ford filed a notice of cross-appeal. Appellant has set forth the following assignments of error:

"1. The trial court committed reversible error and violated the requirements of Revised Code Chapter 2313 by using a non-random manner of jury selection.

"2. The trial court erred by preventing counsel from making contemporaneous objects [sic] during the trial.

"3. The trial court erred by precluding counsel from placing sidebar conferences on the record.

"4. The trial court erred by refusing to instruct the jury on the law of negligence as it applies to products liability claims.

"5. The trial court erred by submitting improper and confusing interrogatories to the jury.

"6. The trial court erred by excluding relevant, probative evidence from both lay and expert witnesses."

Ford has set forth the following assignment of error:

"The trial court erred in taxing juror fees as costs to Ford, the prevailing party."

In the first assignment of error, appellant asserts that the trial court erred, and violated R.C. Chapter 2313, by using a non-random manner of jury selection. Specifically, appellant argues that the verdict needs to be set aside because only those individuals in the jury array whose surnames began with the letters "A" through "M" were selected to be on this particular jury. This resulted from the fact that prospective jurors whose surnames began with the letters "A" through "M" were instructed to be in court in the morning of jury selection while those whose surnames began with the letters "N" through "Z" were instructed to appear in the afternoon, and the jury ended up being impaneled solely from the morning session.

This argument has previously been addressed and rejected by the Twelfth District Court of Appeals in *State v. Buell* (1985), 29 Ohio App.3d 215, 29 OBR 260, 504 N.E.2d 1161. In *Buell,* the court pointed out that the Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to have a jury chosen from a fair cross-section of the community. *Id.* at 217, 29 OBR at 261–262, 504 N.E.2d at 1162–1163, citing *State v. Puente* (1982), 69 Ohio St.2d 136, 23 O.O.3d 178, 431 N.E.2d 987. Thus, a jury must be selected without the systematic or intentional exclusion of any cognizable group. *Id.* at 217, 29 OBR at 261–262, 504 N.E.2d at 1162–1163, citing *State v. Malone* (1984), 15 Ohio App.3d 123, 15 OBR 214, 472 N.E.2d 1122. Minor or technical defects in the jury selection process will not warrant reversal of a judgment unless "prejudice to the defendant or the systematic and intentional exclusion of a group is shown." *State v. Strodes* (1976), 48 Ohio St.2d 113, 115–116, 2 O.O.3d 271, 272–273, 357 N.E.2d 375, 377–378.

The *Buell* court set forth the following test:

"A defendant must demonstrate three factors in order to sustain a challenge to a jury-selection procedure on the basis that the procedure involves a violation of the fair cross-section requirement. First, it must be shown that the group alleged to be excluded is a distinctive group in the community. The second requirement to be demonstrated is that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community. Finally, the defendant is required to show that the underrepresentation is due to the systematic exclusion of the group in the jury-selection process." (Citations omitted.) *Id.* at 217, 29 OBR at 262, 504 N.E.2d at 1162–1163.

The court then concluded that a group of people whose surnames begin with certain letters is simply not a distinctive group in the community. Nor is there any indication that the group of people whose surnames begin with letters comprising the latter half of the alphabet is underrepresented in the community, or that this particular group would be composed of more certain racial or ethnic groups than the group whose surnames begin with letters found in the first half of the alphabet. We agree with this analysis. Accordingly, the trial court did not err in the manner in which it conducted jury selection.

Appellant's first assignment of error is without merit.

In the second assignment of error, appellant contends that the trial court erred by preventing counsel from making contemporaneous objections during trial. Specifically, appellant argues that "the trial court repeatedly refused the parties' requests to comply with the Evid.R. 103(A) and place their objections on the record."

■ It is clear that the trial court judge allowed objections on the record; it is apparent, however, that the judge did not always permit the reasons for the objections to be offered. Instead, the judge invited counsel to submit, in writing, the basis for their objections. Counsel for Ford submitted written objections on numerous occasions. Counsel for appellee did not. While this may not have been the method we would have chosen to conduct a trial, it was, nonetheless, an acceptable method.

■ However, appellant has failed to comply with App.R. 16(A)(7) in that he does not direct this court's attention to any specific portion of the trial transcript to support his argument that the trial court repeatedly refused the parties requests to place their objections on the record. There are 1,384 pages of transcript from a two-week trial. This court is not inclined to embark upon a scavenger hunt to determine whether there is merit to appellant's claim.

The only example that appellant points to within the assignment of error itself is an incident involving a police report made by Sheriff David E. Redecker. There, counsel for appellant inquired whether he could make an argument regarding the admissibility of that evidence. The trial court stated that no argument would be permitted on the record but that he could "proffer it in writing for the record." However, the trial court allowed appellant's counsel to proceed on the record to make his argument as to why the evidence was admissible as an exception to the hearsay rule. Thus, the only example that appellant points to does not, in fact, support appellant's claim of improper conduct.

Thus, appellant's failure to abide by the appellate rules and his inability to establish any prejudice in the record leaves this court with no choice but to find his second assignment of error to be meritless.

■ In the third assignment of error, appellant submits that the trial court erred by precluding counsel from placing sidebar conferences on the record. Once again, however, appellant has violated App.R. 16(A)(7) by not directing this court's attention to a single incidence where this occurred. While this court believes strongly that all sidebar conferences should be recorded, it is equally clear that any alleged error must be pointed out in the record to the appellate court and must be preserved in a manner to facilitate a meaningful review.

■ Additionally, it is well established in Ohio that when sidebar conferences go unrecorded, and a party wants to raise that issue on appeal, that party must first use App.R. 9 to reconstruct the content of the unrecorded sidebars and show prejudice. *State v. Keenan* (1998), 81 Ohio St.3d 133, 139, 689 N.E.2d 929, 938–939; *State v. Spirko* (1991), 59 Ohio St.3d 1, 15–16, 570 N.E.2d 229, 246–248. The

failure to do so results in the waiver of any alleged error. Appellant has failed to provide a statement pursuant to App.R. 9 or demonstrate prejudice.

Appellant's third assignment of error is without merit.

In the fourth assignment of error, appellant maintains that the trial court erred by failing to properly instruct the jury on the law of negligence as it applies to a product liability claim. Appellant argues that he pursued this case under two basic theories: (1) that Ford defectively designed the Mustang and is strictly liable for the design defect and (2) that Ford is liable under common-law negligence for its breach of duty to him. Appellant asserts that the trial court instructed the jury on the first theory but not on the second theory, namely, negligence. Specifically, appellant argues that Ford's crash test program for the 1987 Mustang as it pertained to the restraint system was unreasonable and negligent.

 The Supreme Court of Ohio has held that "[a] jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Becker v. Lake Cty. Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, 171. Additionally, "a trial court should confine its instructions to the issues raised by the pleadings and the evidence." *Id.* A "trial court will not instruct the jury where there is no evidence to support an issue." *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832. In *Jaworowski v. Med. Radiation Consultants* (1991), 71 Ohio App.3d 320, 594 N.E.2d 9, the Second District Court of Appeals stated:

"To show reversible error, the proponent of the error must make a two part showing. First, he must show that the trial court's refusal to give a proposed jury instruction was an abuse of discretion; that is, the refusal was arbitrary, unreasonable, or unconscionable. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. Second, the proponent must demonstrate that he was prejudiced by the court's refusal to give the proposed instruction. In this connection we note that prejudicial error occurs only if the alleged instructional flaw cripples the entire jury charge." (Citations omitted.) *Id.* at 327–328, 594 N.E.2d at 14.

 In the case *sub judice,* appellant argued that the testing of the restraint system was negligent because Ford used frontal barrier and angular tests as opposed to offset crash tests. Yet, appellant presented no evidence as to what offset crash testing would have shown or how the failure to conduct such tests was a proximate result of appellant's injuries. Thus, the trial court properly declined to give a jury instruction on this issue. Moreover, even if it had constituted error not to give the requested instruction, this could not have

amounted to anything but harmless error, considering the fact that the jury specifically found that appellant was not wearing a seatbelt at the time of the collision. Hence, any problem associated with the design of the seatbelt was not relevant to appellant's case.

Based upon the foregoing analysis, appellant's fourth assignment of error is without merit.

In the fifth assignment of error, appellant asserts that the trial court erred by submitting improper and confusing interrogatories to the jury. Specifically, appellant claims that jury interrogatory No. 1 was improper. It stated: "Was [appellant] wearing his seatbelt at the time of the accident?"

From a review of the record, it is clear that appellant never objected to the foregoing interrogatory. Failure to object to the submission of an interrogatory constitutes a waiver of that issue on appeal. *Boewe v. Ford Motor Co.* (1992), 94 Ohio App.3d 270, 278–279, 640 N.E.2d 850, 854–856; *Lohr v. Magill* (Jan. 7, 1983), Lake App. Nos. 9–075 and 9–076, unreported, at 3, 1983 WL 6251. See, also, Civ.R. 51(A). Accordingly, appellant has waived this issue.

Appellant's fifth assignment of error is without merit.

In the sixth assignment of error, appellant contends that the trial court erred by excluding relevant, probative evidence from both lay and expert witnesses. Appellant relies on three specific instances in which, he alleges, the trial court excluded crucial evidence.

It is well established that the trial court has broad discretion to admit or exclude evidence. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058. Thus, absent an abuse of discretion, the trial court's decision will stand. An abuse of discretion involves more than error in judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

The general rule is that relevant evidence is admissible. Evid.R. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

The first incident that appellant points to was the testimony of Sheriff Redecker. At the time of the accident, Sheriff Redecker was a sergeant with the Ohio State Highway Patrol. He was one of the first to respond to the accident and arrived on the scene shortly after the collision. He was prepared to testify that appellant was wearing a seatbelt at the time of the crash.

The record is clear, however, that Sheriff Redecker did not personally observe whether appellant was, or was not, wearing a seatbelt. His opinion was not based upon personal observation but, rather, based upon statements made to him by Mergen, the driver of the automobile. The trial court precluded Sheriff Redecker from repeating at trial what Mergen had told him. Mergen, himself, testified at trial. Thus, this testimony was inadmissible pursuant to Evid.R. 602, which precludes testimony to a matter "unless evidence is introduced sufficient to support a finding that [the witness] has personal knowledge of the matter." This evidence was properly excluded as hearsay.

 Further, appellant argues that this information, which was also included in the officer's traffic report, should have been admitted as a public record under Evid.R. 803(8)(b), which is an exception to the hearsay rule. However, that rule contains a qualification that the matters were observed pursuant to a duty imposed by law and that there was a duty to report. Hence, there is still a hearsay problem. The observation in question was not made by the officer but, rather, by someone who did not have a duty imposed by law to report any observations he may have had regarding appellant's seatbelt usage. Statements made to a police officer by a person involved in an automobile accident and incorporated into the officer's report are inadmissible hearsay. *State v. York* (1996), 115 Ohio App.3d 245, 248–249, 685 N.E.2d 261, 263–264; *Petti v. Perna* (1993), 86 Ohio App.3d 508, 513, 621 N.E.2d 580, 583. Hence, this portion of Sheriff Redecker's report was not admissible and it is clear that the trial court did not err.

 The second incident that appellant directs this court's attention to was the testimony of his expert witness, Stephen Syson. It is apparent from the record that Ford filed a motion *in limine* prior to trial to exclude testimony from Syson regarding his "MADYMO" computer program simulations. The trial court granted Ford's motion *in limine*. Appellant never made an offer of proof as to the substance of the excluded testimony. The law is clear that a party who has been restricted from introducing evidence by virtue of a motion *in limine* must seek introduction of such evidence at trial by proffer or otherwise or that party waives that issue for appeal. *State v. Grubb* (1986), 28 Ohio St.3d 199, 202, 28 OBR 285, 288–289, 503 N.E.2d 142, 145–146. Thus, by failing to make a proffer of this evidence, appellant has waived the issue at the appellate level.

 Finally, the last evidence that appellant claims was wrongfully excluded was certain photographs from a different car accident that he wanted to use to cross-examine one of Ford's experts with. This occurred during the cross-examination of Edward McKenna. The photographs were of a different vehicle that was manufactured by a different manufacturer and that had a different

restraint system. From a review of the record, it is apparent that while the trial court declined to admit these photographs into evidence, appellant was permitted to cross-examine McKenna at length regarding the photographs and they were shown to the jury. Under these circumstances, the trial court did not abuse its discretion in refusing to admit those exhibits. Furthermore, appellant has failed to demonstrate how he could have been possibly prejudiced by the trial court's decision.

Based upon the foregoing analysis, appellant's sixth assignment of error is without merit.

In Ford's sole assignment of error raised in its cross-appeal, it contends that the trial court erred in taxing juror fees as costs to Ford, the prevailing party. We agree.

The trial court ordered Ford to pay $1,500 in juror fees, even though Ford prevailed at trial. Ford filed a post-trial motion to have that order reversed. A hearing was conducted, at which time the trial court refused to change its order, noting that Ford had "earned 1.11 billion—that's a capital B on billion—dollars * * * in the third quarter of [1999]." The obvious implication being that Ford could easily afford to pay juror fees. While that might be true, there is no support for the trial court's action, and we believe that it would be bad precedent to allow trial courts to start making legal decisions based upon who has the deeper pockets.

R.C. 2335.28(A) gives the trial court discretion to refuse to tax juror fees as costs to a non-prevailing party if it finds that significant financial hardship or injustice would result therefrom. It does not, however, authorize the trial court to order a prevailing party to pay those costs. Nor does Civ.R. 54(D), which provides the general rule that costs shall be allowed to the prevailing party. Hence, the trial court erred by ordering Ford to pay $1,500 in juror fees.

Ford's sole assignment of error is sustained.

The judgment of the trial court is affirmed with respect to appellant's assignments of error, but reversed on Ford's cross-appeal and remanded to the trial court to enter judgment in accordance with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

CHRISTLEY and GRENDELL, JJ., concur.